EVANS-SNYDER-BUELL CO. v. FIRST NATIONAL BANK OF AMARILLO.

Delivered January 20, 1897.

**1. Notice—Consignment to Factor—Lien in Favor of Third Person.**

On a consignment of live stock to a factor, recitals in a draft drawn against them and indorsed to a third person, showing the number of cattle shipped, and further recitals in the waybills that they are consigned for the account of such third person, in connection with the course of dealing between the consignor and factor, are sufficient to notify the factor that a lien exists in favor of such third person for money advanced by him.

**2. Consignment to Factor—Diversion of Proceeds from Rightful Owner.**

When a factor or commission merchant receives goods consigned to him by the owner, with notice at the time he receives them that the owner has given to a third person for money advanced the right to the funds which may arise from the sale of the property, such factor cannot divert the funds from the third person without liability to him.

APPEAL from Tarrant. Tried below before Hon. W. D. HARRIS.

*West & Smith* and *Matlock, Cowan & Burney,* for appellant.—When a factor or commission merchant receives several consignments of goods shipped at different dates, with notice at the time it receives the same that the same person is the owner of the different consignments, and that each shipment is for the account of the same person, then it is immaterial as to how the account is kept, and how the balance arising from the sale of the goods is applied, provided the commission merchant shall account to the owner, or the person entitled thereto, for the proceeds of the sale of goods, less cost and expense of handling same.

*Stanley, Spoonts & Thompson,* for appellee.—When a bill of exchange is drawn against a consignment of goods, the consignee will not be entitled to the goods, and cannot dispose of them, until he has accepted the bill; and the receipt and disposition of the consigned property, with notice that it had been drawn against, is in effect an acceptance of the bill, at least to the value of the consigned goods. Byles on Bills, 204; Randolph on Com. Paper, sec. 634; Shepherd v. Harrison, L. R., 5 H. L., 116; Porter on Bills of Lading, 511, 512, 518, 519, 520, 473, 485; Grove v. Brien, 8 How., 429.

TARLTON, CHIEF JUSTICE.—The appellant was a commission merchant engaged in selling live stock on commission in Kansas City and

St. Louis, Mo., and in Chicago, Ill. One B. Gatewood was a buyer of cattle in Texas for shipment and sale to the points of appellant's business.

On October 31, 1894, Gatewood, himself insolvent, purchased from one Roy Riley 185 head of cattle for $3690.25, to be shipped for sale by appellant in Kansas City. Gatewood, without funds himself to pay Riley for the cattle, obtained the money from the First National Bank of Amarillo, under the following arrangement:

The bank paid the purchase price to Riley. Gatewood executed his draft upon the appellant for the amount, payable to the order of Riley, and the latter endorsed the draft to the appellee. By the terms of the draft the appellant was directed to pay the sum of money specified to the order of Riley, for 185 head of cattle shipped on the day of its date.

The cattle thus purchased from Riley and paid for by the bank were on the same day delivered to the Fort Worth and Denver City Railway Company at Amarillo, and for them the company issued its way bills and shipping contract, showing: "Consignor, B. Gatewood; account First National Bank, Amarillo; consignee and destination, Evans-Snider-Buell Co., Kansas City, Mo.;" and indicating the weight, rate, charges, etc., connected with the shipment. A way bill thus issued for each car was prepared and carried along by the conductor of the train transporting the cattle.

This transaction of October 31 was effected on the part of Gatewood through his agent, one William Harrold, Gatewood himself being at that date in Kansas City. The arrangement was in accordance with the course of dealing which had been established between Gatewood and the appellant. The profit to appellant from transactions of this character consisted in the opportunities thus afforded it of securing commissions for the sale of cattle. The profit to Gatewood contemplated by him consisted in the fact that he should realize any surplus in the proceeds of the cattle sold, over and above the amount of the purchase money and the commissions and expenses incident to sales.

On October 29, 1894, Gatewood had made two shipments over the Fort Worth & Denver City Railway from Amarillo to Kansas City. These shipments were consigned, as was that of October 31, for the account of the appellee. The consignee in one of the shipments was the appellant; in the other the consignment was in the name of McDonald-Crowley-Farmer Company, a live stock commission merchant.

In connection with the former of the two last named shipments, a draft was drawn bearing date October 29, 1894, payable to the order of the cashier of the appellee, for "eighty-four hundred thirty-nine and 55/100 dollars ($8439.55), for 408 cattle shipped to-day." In connection with the latter shipment a draft was drawn by one S. W. Barber (who acted for Gatewood) upon the McDonald-Crowley-Farmer Company, and endorsed by Gatewood, for $4704, payable to the order of the cashier of the appellee, "for 224 head of cattle shipped for account of B. Gatewood."

These drafts were delivered to the plaintiff for the purpose of reimbursing it for the money advanced in the purchase of the cattle therein referred to. Both shipments were forwarded to the appellant at its office in Chicago, the consignment to McDonald-Crowley-Farmer Company being delivered to the defendant by virtue of an understanding on the part of itself, the McDonald-Crowley-Farmer Company, and Gatewood.

The net proceeds of the two shipments of October 29 were $2452.26 less than the amount of the drafts drawn against the shipments. On November 2, 1894, the two drafts for $8439.55 and $4704 were paid by the appellant at its office in Kansas City, under an agreement between it and Gatewood that it would protect the drafts. The appellant then knew that the drafts were drawn against the funds that would arise from the 408 cattle and the 224 cattle mentioned therein, and against no others.

Before paying these drafts it had received the shipment of October 31, and had notice that this shipment was to be sold for the account of the plaintiff, and that a draft had been drawn against the funds which might arise from the proceeds of the 185 head of cattle in question. The appellant nevertheless sold the cattle and applied the proceeds thereof, to the extent of $2452.26, for the purpose of reimbursing itself for the excess of the payment over the proceeds of the shipments of October 29. The remainder of the proceeds of the shipment of October 31, amounting to the sum of $1237.99, it retained for the account of Gatewood. It refused to pay the draft of October 31 in favor of the appellee.

*Opinion.*—The plaintiff prayed for the recovery of the full amount of the draft of October 31, or in the alternative, for the recovery of the net proceeds of that shipment. It obtained judgment for the latter amount.

The contention of the appellant, briefly stated, is that it had the right to apply the net proceeds of the shipment of October 31 to the payment of the two drafts of October 29 which it had honored. The remainder, $1237.99, it tendered subject to the order of the court, and now insists that the judgment of the lower court should be reversed by us, and that we should render judgment for the appellee for $1237.99, without interest.

Appellant's first assignment of error complains of the trial courts' eighth conclusion of fact, which is as follows: "B. Gatewood accompanied these two shipments of October 29, 1894, to Kansas City, Mo., and on about October 31, 1894, he and defendant and the McDonald-Crowley-Farmer Company by some understanding between them forwarded said two shipments to the defendants at their office or place of business in Chicago, on account of the dull market at Kansas City, and the consequent inability to sell the same on the Kansas City market for the amount of the two drafts (over and above expenses, etc.) of $8439.55 and $4704, about which said Gatewood and defendant then conversed,

and which drafts the court finds from the evidence the defendants agreed to protect, it being represented to the defendants that there was a shipment behind on which money (profits) would be made, and out of the proceeds of which the defendants would be reimbursed for any amount that the cattle then being carried to Chicago might fall short of equaling the said drafts."

The evidence, we think, supports the conclusion that the defendant agreed with Gatewood to protect or pay the two drafts above mentioned, and that at the time of their payment it had notice of the draft against the shipment of October 31, and of the right of the appellee to the net proceeds of that shipment. Under our view of the law, to be hereafter more specifically stated, it is immaterial to the plaintiff's case whether the payment of the drafts was made by virtue of an agreement with Gatewood, or what motive prompted that agreement. Under the facts found by us, the right of the plaintiff to the proceeds of the shipment involved in this issue should not be made to depend upon an agreement between appellant and Gatewood to pay the two drafts of October 29.

The proposition asserted under this assignment, that "a judgment will be reversed if it is clearly against the evidence," while abstractly indisputable, is not believed to be relevant. The conclusion of fact complained of is not the judgment of the court in this case, and such a conclusion, involving findings immaterial, even if otherwise assailable, would not require a reversal of a judgment well founded without reference to the correctness of the immaterial finding.

The eleventh assignment of error (next urged) complains of the trial court's first conclusion of law, which is as follows: "As the defendant agreed with B. Gatewood on about October 31, and before the drafts of the 29th of October were presented, that it would protect the said drafts of the 29th of October, it thereby ratified the act of B. Gatewood in drawing the same, and it became bound therefor, whether the shipment of the 29th of October brought funds sufficient to pay same or reimburse them or not."

It is contended in this assignment, and in the first proposition thereunder, that the pleadings of the plaintiff do not justify the judgment in this case, because they do not allege an agreement with Gatewood, or a ratification of his acts in drawing the draft, as a cause of action in plaintiff. We are of opinion that, without reference to the question of Gatewood's agreement, or any ratification by the appellant resting thereupon, the pleadings and the evidence justify the judgment in this case, and render wholly immaterial the special conclusion of law here complained of.

The recovery awarded was for the net proceeds of 185 head of cattle purchased by Gatewood from Riley and involved in the shipment of October 31, not for the full amount of the draft drawn by Gatewood against that shipment. The alternative prayer of the petition was for the sum adjudged. Among other matters, the plaintiff alleges that as a

precaution and security for the payment of the draft, the cattle were consigned to the appellant on account of the appellee, that appellant might know that Gatewood had drawn against the shipment, and that the proceeds thereof should be paid to the appellee, to the extent of the draft, and that appellant would be entitled only to its fees and charges as in other cases; that it was the duty of the appellant to account to the appellee for the proceeds; that the net proceeds amounted to $3462.90, which it refuses to pay, holding them for some kind of debt it has against Gatewood arising out of other transactions. The plaintiff's allegations clearly indicate that the cattle were thus sold and the proceeds retained with knowledge on the part of the defendant of the plaintiff's right to the proceeds.

· Complaint is next urged that the court erred in the ninth finding of fact, which is as follows: "When the two shipments of October 29 were made, as well as at the time of each previous shipment by Gatewood (of which there had been several), the defendant was notified by Gatewood of the number of cattle shipped and of the amount drawn against them." It is insisted that this conclusion is erroneous, because "the evidence in the case showed that no notice was given to defendant as to the number of cattle shipped and the amount drawn against them, save such notice as was contained in the draft and the waybill, if any, and the evidence does not show that any other notice than such as hereinbefore is stated was given as to said shipment or amounts drawn against same by anyone."

Our conclusions of fact indicate that we must overrule this assignment, for the reason that we have found that the appellant at the time it received and sold the cattle in question, and at the time it paid the prior drafts, had notice as to the number of cattle shipped, and that a draft in favor of the appellee had been drawn against them. We think the evidence fully sustains this conclusion. The recitals in the waybill that the cattle were consigned for the use or the account of the appellee, justify this inference, in connection with the course of dealing on the part of the appellant with Gatewood. Thus, the witness William Hunter, himself connected in business with the appellant, testifies, in effect (on pages 123, 124 and 127 of the transcript), that the recital in the draft showing the number of cattle shipped, and in the waybills of statements such as have been hereinbefore set out, notifies the consignee that the live stock is held under a lien for the security of the draft and for the money advanced by the third person, such as the appellee in this case. It is immaterial whether notice to the appellant was given directly by Gatewood, as was found by the court, though evidence in the record tends to establish even this conclusion.

The conclusions of law complained of in the thirteenth and sixteenth assignments of error, which we deem it unnecessary to set out, are immaterial, as we think, to the judgment rendered. They are regarded as excessive. They may be wholly dispensed with in disposing of the appeal.

The sixth conclusion of law, complained of in the seventeenth assignment of error, is in all substantial respects a correct enunciation of the law bearing upon this controversy, and touches the kernel of the plaintiff's case. It is there stated, in effect, that when a factor or commission merchant receives goods consigned to it by the owner, with notice at the time it receives them that the owner has given to a third person for money advanced the right to the funds which may arise from the sale of the property, such factor cannot divert the funds from the third person without liability to him; that it cannot receive the funds as if to carry out the will of the consignor and respect the rights of the third person, and subsequently apply the proceeds of the sale to the payment of an account due the factor by the consignor.

When, in this case, the appellee advanced to Gatewood the money applied in the purchase of the cattle from Riley, taking a draft upon the appellant and consignee for the money thus advanced, and when the waybills were issued upon the shipment reciting the consignment to be for the account of the appellee, and when the appellant received and sold the cattle with notice of these facts, it must be deemed to have held the net proceeds at least of the cattle for the use of the plaintiff. It is as if the shipper, Gatewood, had given a draft upon the appellant with bill of lading attached, showing that the shipment was on account of the appellee and for its use.

By discounting the draft thus drawn against the shipment for the purchase price of the cattle and accepting the transfer thereof, in connection with the waybills, the cattle were pledged to the plaintiff, at least to the extent of their net proceeds; and the appellant, having notice of the plaintiff's claim, had no right to appropriate these proceeds to the payment of an indebtedness due by Gatewood to it on account of drafts drawn against other shipments, which it paid at Gatewood's request. Byles on Bills, 204; Randolph on Commercial Paper, sec. 634; Porter on Bills of Lading, 518, 519; Grove v. Bryan, 8 How., 429.

The payment of the two prior drafts at the request of Gatewood rendered him liable to the appellant (Randolph on Commercial Paper, sec. 628), but gave it no cause of action against the appellee.

This view is in accordance with the appellee's contention, which we approve, and with the judgment appealed from, which we in all things affirm.

*Affirmed.*

Writ of error refused.