GARZA v. KLEPPER et al. (No. 8149.)

Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1929.

Rehearing Denied March 20, 1929.

land to Thomas N. Klepper, Mary La Rue Klepper, and Robert G. Harris, residents of Bexar county, Tex. The land appears to have consisted of two tracts, of 20,000 acres each, one designated as the "Santa Eulalia" and the other as "La Borbolla." The parties entered into two written contracts of identical terms, one in January, 1925, and the other in March, 1925, relating to Santa Eulalia and La Borbolla, respectively. These contracts were in the nature of mineral leases, wherein Garza, as the lessor, undertook to convey to the other parties, as lessees, the right to develop said lands, particularly for oil and gas purposes. It afterwards developed that these contracts were ineffectual, under the peculiar laws of Mexico, as conveyances of the rights sought thereby to be assigned, and, in order to effectuate their intention, the parties canceled the original agreements and entered into new contracts on December 22 and 23, 1925, separately covering both tracts of land. By these final contracts Garza conveyed the "under soil" of the land, and his preferential right to develop the same, to two corporations thereafter to be organized by the parties to the contract.

It appears from the record that under the laws of Mexico the grantee of the preferential right to develop the under soil of land in that republic must first obtain from the Mexican government a permit to exercise those rights. With this in view, Klepper and his associates made application for such permit to the Mexican Minister of Industry and Commerce and Labor. It is inferable that the applicant in such case is required by the government to exhibit to the appropriate department, within a specified period, certain evidence of the authority of the applicant to exercise the claimed preferential rights. Klepper and his associates failed to present this evidence within the time prescribed by the government, whereupon they abandoned the project.

Klepper and his associates brought this action against Pablo Gonzalez Garza to recover the amount of rentals they had paid him, as well as for the time and expenses they had devoted to their fruitless efforts to operate under the contracts. They alleged, and the jury found, that Garza had fraudulently and falsely represented to them, and warranted to them, in the contract, that he was the owner of the title to the land, and had obligated himself to furnish them with evidence of his good title; that he had failed and refused to furnish them with that evidence, and as a matter of fact had no title, whereby the consideration they had paid him for the contract had failed.

Some time after the suit was instituted Garza, the original defendant, died, leaving a will, and being survived by his wife, Antonia, an adult son Carlos and a minor son,

Douglas, Carter & Black, of San Antonio, for appellant.

Guinn & McNeill and Woodson Morris, all of San Antonio, for appellee.

SMITH, J. Pablo Gonzalez Garza, claiming to be the owner of 40,000 acres of land in the state of Tamaulipas, republic of Mexico, undertook to assign his mineral rights in said

Rodolfo. The widow was appointed administratrix of the estate of her deceased husband, and she, both in her individual and representative capacities, her two sons, and the Gonzalez Garza Company, a corporation, were duly substituted as defendants in the suit. The cause was tried by jury, resulting in a verdict and judgment in favor of Klepper and his associates against Antonia Gonzalez Vda. de Garza in her representative capacity (the other defendants having been dismissed), for $7,200 rentals paid Garza, $2,000 expenses incurred, and $2,800 time and labor lost. Mrs. Garza has appealed.

The duties resting upon Garza in the transaction are fixed in the contracts of December 22 and 23, 1925, and must be tested by the provisions and language of those contracts, which were identical and will be treated as one for the purpose of this inquiry. If the language of those provisions is ambiguous in a material particular, pleadings and parol testimony may be looked to for explanation of the ambiguity. But parol testimony may not be considered for the purpose of adding to or subtracting from or varying the plain provisions of the instruments. Nor may the prior written agreements, which were superseded by the final agreements, be looked to for either of those purposes. It is probably true that the prior agreement may be considered in determining the meaning of ambiguous language or provisions of the final agreement, where they clearly relate to the inquiry.

It seems to be conceded by all parties that the original agreements were wholly inadequate, under the peculiar laws of Mexico, to vest in appellees the inherent right of Garza, as the purported owner, to prospect for and take the minerals from the lands in question, which was the purpose of those instruments. When this fault in the original instruments was discovered, after the lapse of several months, the parties entered into a new contract purporting to cover the whole field of agreement, completely superseding the previous effort. This purpose to fully retire the original contracts was evidenced not only by the language of the substitute instrument, but by this memorandum signed by all the parties and indorsed on each of the substituted contracts, which were identical and will be treated as one:

"Dec. 23, 1925. In view of the fact that the foregoing lease is in violation of Article 27 of the Mexican Constitution and so recognized by both parties hereto, and is therefore null and void, and, in consideration of the credit by Pablo Gonzalez Garza of $2,000.00 on a new contract with the undersigned made this day, being the same $2,000.00 declared to have been received by Mr. Gonzalez on the new contract, the undersigned hereby acknowledge that there is no further liability to either of the parties under this contract."

The original contract was in form and substance similar and amounted to no more than the familiar Texas oil and gas lease. The second, or substitute, contract was entirely different in form, and largely so in substance as well. By its provisions, the grantor and grantees agreed to organize a corporation, to be domiciled in the city of Monterey, state of Nueva Leon, Mexico; its object being the "exploration and exploitation of the under soil of the" land described. In the contract, Garza conveyed to the proposed corporation "his rights to the undersoil of the land," and "especially" the "right of preference for the exploration and exploitation of the petroleum (mineral oil) * * * in conformity with the Constitution of 1917 in force in the Mexican Republic and decrees relative issue in the same Republic." In other words, the whole estate sought to be assigned was conveyed in the final contract to the prospective corporation, and not to Klepper and his associates, as individuals, as was done in the original contracts thereby superseded. And in the final contract the right and duty of soliciting the desired permit to exploit the lands were placed in the corporation and its legal representatives, and not in the individuals, Klepper and his associates, as had been done in the superseded contract. And in the final contract, as well as in the original, the whole burden and expense of procuring the permit from the government, and of organizing and operating the corporation, was placed upon appellees.

In the final, and controlling agreement, the references to title were quite different from those in the superseded contract. For, in the final agreement, in lieu of the recital in the superseded contract that Garza "represents that he is the owner of the" land, and that he thereby conveyed outright the minerals therein to appellees, it was recited that "by public instrument executed in the City of Monterey, State of Nueva Leon, Mexico, the first of July, 1919, before" a named notary, Garza "acquired from" Guillermo Gonzalez and wife certain lands therein specifically described, being the lands in question, and in that instrument "contributed and conveyed" to the corporation therein agreed to be organized "his right to the undersoil" of the lands thereinabove "described and mentioned," in conformity with the then current provisions of the Mexican Constitution. It will be readily observed that there was no express representation or warranty of good title. There was but the simple recitation that at a particular place, on a specified date, Garza "acquired" the particular land from the named grantors. But, while there was no express assertion of Garza's ownership of title, such assertion will be implied from the act of conveyance for a valuable consideration. He assumed the position of warranting such title as would effectuate his con-

·veyance of the right of exploitation. This is emphasized by the incidental provision in the final contract that Garza was to have "no obligations and reponsibilities of any other kind, except the furnishing of the rights to which reference has been made." By this assumption to furnish (effectually convey) those rights (to exploit the land), he asserted, by implication, such title as would give him power to effectually convey.

There also was testimony that appellees were induced to go into the contract by Garza's statement that he owned good title to the land. Ordinarily, a contract induced by a false statement of a material fact amounts to a fraud justifying rescission, but whether a cause of action therefor survives the death of the person guilty of the fraud, need not be determined, in view of our holding that Garza in effect warranted title. This observation is called for by appellant's contention that such cause of action does not survive.

■ Garza was not obligated in the final contract to furnish appellees with the documentary evidence of his title, either expressly or by implication. The subject was not referred to in the instrument by any express language, nor by implication, unless such implication arises from the reiterated provisions running through the contract as to the whole duty and expense of presenting to the government evidence of the proposed corporation's preferential right to explore and develop the land, as a condition to the issuance of drilling and other essential permits. If anything is to be implied from these provisions, it is that the burden of procuring these evidences, as well as of exhibiting them to the government, rested upon appellees. The whole tendency of the contract was to relieve Garza of any of the labor and expense of the preliminaries necessary to the commencement of operations under the contract, as well as of the actual operations thereunder, and this probable intention was emphasized by the final express provision of the agreement that "All expenses of the exploration, exploitation and others that the business may require, will be at the exclusive expense of the partners Messrs. Klepper and Harris and in no event will Mr. Gonzales Garza be responsible for the expenses of any kind, nor will he have obligations and responsibilities of any other kind, except the furnishing of the rights to which reference has been made."

Appellees seek to construe the clause, "except the furnishing of the rights to which reference has been made," to mean that Garza was required to furnish appellees with the evidence of his title. We do not so construe that clause. There is a vital difference between "rights" and "evidence of rights." It is the difference between "title" and "title papers." One is the evidence of the existence of a thing; the other is the thing itself. When a grantor obligates himself to furnish title, he discharges the obligation by conveying title; he is not required to go further and furnish the grantee with the physical muniments of his title, or authenticated copies thereof, unless he expressly so obligates himself. He is not obliged to furnish an abstract of his title, or the original or certified copies of the muniments of his title, in the absence of express agreement thereto. So, when Garza executed and delivered the contract conveying his preferential rights to exploit the land, as he did, he thereby discharged his obligation to "furnish" the rights thereby conveyed. If appellees desired or expected him to go further and supply the originals or certified copies of the muniments of his title, they should have had provision therefor incorporated into the contract. There is no allegation or proof that through fraud, accident, or mistake such provision or agreement was omitted from the written contract, and, in the absence of such allegation or proof, parol evidence will not be received for the purpose of adding that agreement to the written contract. Appellees' theory, and the jury's finding, is that Garza "promised" to supply documentary evidence of his title, thereby inducing appellees to enter into the contract. It is not a finding of a false representation, but of a promise made by Garza to do something in the future in addition to the things he agreed in the writing to do. It being omitted from the written instrument through no fraud, accident, or mistake, and it not appearing that it was made with a present fraudulent intent not to perform it, it cannot be given forced effect.

■ The judgment appealed from was based in part upon appellees' contention, and the jury's finding, that Garza was "without title" to the land in question. The burden rested upon appellees to both allege and prove the insufficiency of Garza's title. We are obliged to sustain appellant's proposition that appellees failed to carry this burden in their pleadings. Appellees' allegation upon this point was simply that Garza "had no title" to said lands. Appellant excepted to this allegation as being insufficient, in that it pointed out no specific defect in Garza's title. The court overruled this exception, and appellant assigns error. We think the assignment should be sustained. Appellees assumed the position of affirmatively attacking the title, and the burden rested upon them when confronted with the special exception, to point out the elements which rendered the title nil, or the defects which rendered it incomplete, or else to allege conditions which would excuse them from setting up specific facts to support the obviously general allegation of want of title.

While this court refrains from passing upon the sufficiency of the evidence to support the contention that Garza had no title to the land in controversy, we deem it proper to ex-

press some doubt upon that point, in the hope and belief that this issue may be clarified upon another trial. It is quite clear to this court that the burden rested upon appellees to affirmatively show by evidence that Garza had no title to the land, or that his title was so defective as to warrant the Mexican government, upon presentation to it of the actual status of that title, in refusing to issue to Garza's assigns a permit to exploit the land. Appellees assumed the position of attacking the validity of Garza's title, and the burden rested upon them to sustain that position by evidence affirmatively showing that the title was in others, or at least that it was not in Garza. Probably it should be presumed that, if Garza had no title, the evidence of the fact lies in the archives of the Mexican district in which the land is situated; if the title is not in Garza but is in others, the evidence thereof is presumptively in those archives. But appellees do not appear to have consulted those archives, or to have made any effort to ascertain or prove their contents. Appellees appear to base their contention of no title upon "testimonios," the sufficiency of which they attack upon the grounds that the recitals therein concerning the antecedent conveyances upon which the testimonios are based, are incomplete or insufficient. There is no showing that those antecedent conveyances do not exist, or are not on file with the appropriate governmental agency, or that they are not in fact sufficient to effectuate their true purpose in the chain of the title involved. The record does not appear to be in such condition as to enable this court to determine the necessity of producing the original antecedent elements of the title or properly authenticated copies thereof, or proof of the absence of such elements from the archives or records. The sufficiency of the testimonios in evidence to show or defeat title was the subject of expert testimony upon the trial, but the lawyers testifying, although apparently learned and skilled in the subject, seemed to differ upon the vital question of the effect and sufficiency of those documents. Learned counsel in obvious good faith likewise differ uncompromisingly upon it. By this process, the important and to us perplexing question of the validity and sufficiency of Garza's legal title to a tract of land in our sister republic, and under the versatile executive regulations, laws, and Constitution of that republic, was passed upon by a Bexar county jury. The record upon that important issue is so confused, vague, and indefinite, and is so hedged about by nice distinctions and intricacies of construction, that this court, not being required to decide it in view of reversal upon other grounds, relegates it to another trial, in the hope that it may be clarified, so that this court, as well as a jury, may pass upon it with satisfaction.

■ It is appropriate at this juncture to notice appellant's complaint against the action of the trial court in submitting the issue of title to the jury in the form employed in this case. The issue was submitted through this question, "Was Pablo Gonzalez Garza then without such title to said lands or such interest therein as would enable said lessees under said leases, or under the contracts of December 22nd and 23rd, 1925, to develop said lands for oil and gas?" It was submitted without any definition or other explanatory instructions from the trial judge. Appellant urges that, in the absence of restrictive or explanatory instructions from the court, the jurors were authorized to roam at will through the evidence and search for and seize upon any document, fact, or circumstance which might occur to their lay minds as pertinent to the question; that it was the duty of the court to appropriately instruct the jury upon the subject so that the jury would have a guide by which to reach the true result through consideration of only such evidence as was legally pertinent to the issue. We think this contention is sound, in the abstract, but conclude that the duty rested upon appellant to formally request the court to give such instructions, and that, because she failed to make such request in any form, she is not in a position to complain of the nonaction of the court.

■ Appellant further complains of the issue of title in the form submitted, upon the ground that it confides to the jury an issue embracing mixed questions of law and fact. This complaint presents a difficult question of law. It is true as a matter of course that the general question of the validity or sufficiency of a purely record title is one of law for the court to determine. If the title depends upon the existence or genuineness of a particular document or fact, and there is a conflict in the testimony thereon, a question of fact is presented for the jury. And it may be said, generally, that, when the jury determines this issue of fact, the court will determine the legal weight and effect of the finding of fact upon the title under consideration.

■ The sufficiency of Garza's title to the land in question here is determinable by the laws of Mexico, a foreign country. None of the relevant provisions of those laws were in evidence, however, and our courts do not judicially know what those laws are or what legal effect shall be given them in a particular case. In this situation it became necessary and proper to resort to expert testimony to ascertain the legal effect of those laws upon the title in controversy. The only evidence adduced as a basis for expert testimony consisted of two testimonios, bearing upon the two tracts of land involved. We do not decide the question of the sufficiency of these documents as a basis for determining the general issue of title. Their legal effect as such instruments, however, depended upon

the laws of Mexico relating to them, and upon the Mexican construction of those laws, and the only evidence adduced upon the point was the testimony of lawyers who were shown to be expert upon the subject, and who gave their opinions upon the true construction of those documents under the Mexican construction of the laws of Mexico. These opinions were in sharp conflict, thus raising a question purely of fact. The issue thereof was therefore for the jury to determine. If the record upon another trial requires the resubmission of this issue, however, we take the liberty of suggesting that it be restricted to the very questions raised by the testimony, requiring the jury to determine the existence or absence of specific elements of title. From these specific findings of fact by the jury, the court should draw the ultimate legal conclusion upon the general question of title.

It is well to observe that appellees lay much stress upon the government's rejection of the application for a permit, as evidence of Garza's alleged lack of title. This action of the government has no weight upon the issue of title, however. In the first place, the government did not deny the application for permit, did not take the position that Garza had no title. The government simply refused to further extend the time within which appellees would be allowed under their application to exhibit evidence entitling them to the desired permit. The refusal of the government to extend this time was evidenced by a letter from the Secretary of Industry and Commerce and Labor to Jose Lopez Alcar as the "representative" of appellees, as follows:

"With reference to your Writ dated 2nd inst., with which you are sending copies showing corresponding notice relative to the solicitude of concession, that was made by your constituents about the tracts denominated 'La Borbolla y Anexas', of their property, soliciting an extension of a month term, ending on the 24th of present month, for the presentation of the documents which prove the rights of the interested parties; it is made known that this Secretary, taking in consideration former extensions that in their behalf have been granted, since October 24th, last, concedes to the above mentioned parties one more and last extension until the 31st of the present month, which is of an irrevocable character for the presentation of the above referred documents, you being hereby warned that if this is not done as indicated, Article 22 of Oil Regulation Law, in force, will be applied to the interested parties."

■ It will be observed that the government made no point that Garza's title was bad, or doubtful, or that the evidence then before it had ony effect towards negativing the title; it simply called for the "presentation of the documents to prove the rights of the interested parties." The record does not disclose the character of documents required by the government, or that appellees, if given time, could not procure such documents, or that they did not exist, or were unobtainable from the usual sources. The burden rested upon appellees to show the nature of these documents and that they could not be produced for the information of the government. Appellees did not meet this burden at all, and the action of the government in declining to further extend the time allowed appellees for presenting the required documents can have no bearing upon the issue of title.

■ The trial court directed the jury to find for appellees for all reasonable and necessary expenses incurred by appellees in their efforts to operate under the original contracts as well as under the substituted contracts, and the jury so found, and judgment was rendered thereon. As has been shown, the original contracts were wholly ineffectual for appellees' purposes; they were "void" as being in "violation" of the provisions of the Mexican Constitution of 1917, according to recitals embraced in the final contracts. The original contracts were voluntarily entered into by all the parties, neither of whom, it appears, knew, at the time, of their invalidity which was not discovered until in December following the execution of those contracts in January and March. In this situation there can be no reason for penalizing Garza by requiring him or the representative of his estate to pay all the expense of a mistake attributable as much to his adversaries as to him. Moreover, in canceling the original contracts, it was stipulated by all the parties that in consideration of Garza crediting on the new contract the payments made by appellees on the old contracts, it was agreed that "there is no further liability to either party under this (old) contract." We conclude that the facts stated, and the express agreement indorsed on the old and canceled contracts, certainly had the effect of excusing Garza from liability for expenses uselessly incurred by appellees in trying to operate under a void contract of their own making. Garza was under no obligation to make the new contract, which was quite different from the old, in both form and substance. He could have declined to go forward with the project in hand, in which event his liability would have been measured by the conditions at that time. He exercised the option to go forward under a new contract, in consideration of being expressly released from all liability under the original contract, to which appellees agreed, and by which they will be bound. Obviously, the rights, duties, and obligations of the parties are fixed by the final agreement. It is equally obvious that appellees cannot recover of appellant for time, labor, and expenses incurred by them in their fruitless effort to operate under the superseded agreement. They expressly waived all such rights under the original contract, in

consideration of Garza's entering into the final agreement.

Many specific questions are raised in the briefs of the parties, but we conclude that the conclusions we have expressed upon the questions specifically discussed have the effect of disposing of those not specifically mentioned.

The judgment must be reversed, and the cause remanded.

## On Motion for Rehearing.

As stated in the original opinion, appellant was under no primary burden to show that Garza had title to the property in controversy. The burden was rather upon appellees to show that Garza had no assignable title, and until appellees made a prima facie case showing such lack of title, appellant was not required to take the initiative. Appellees did not meet this burden upon the trial. They directed all their energies towards showing that Garza did not produce to them the papers evidencing his title. Their duty was to go to the original sources, to the archives, to the appropriate registration offices, to the authorized custodians, and to obtain from them the evidences of the title in whomsoever that title rested. It is inconceivable that the records of the republic are wholly silent upon the matter of the title to this block of 40,000 acres of land, shown by the record here to consist of numerous separate tracts.

Appellees stood upon the contention that the only evidence of title obtained by them from Garza consisted of testimonios, which Garza said was all he had. It is shown in this connection that, just before the expiration of the time allowed by the government to appellees for the showing of title entitling them to the desired permit, appellees called upon Garza in his San Antonio residence and demanded his title papers; that Garza had a search made among his papers there in his home, and, finding none, told them that the testimonios already in the possession of appellees was "all he had." It is quite obvious from the record that by this Garza meant that he had no other title papers among those in his home, and that he did not mean that all the title he had rested upon those testimonios. That incident is without value in the determination of the matter of title.

If upon another trial it is shown that at the time of the execution of the contracts in controversy the grantor had no such title in the estate sought to be conveyed by him in those contracts as to legally empower him to convey that estate, then it becomes a matter of course that the consideration paid him by appellees failed, and appellees are entitled to recover that consideration, as well as all other damages sustained by them as a proximate result of that failure.