## MARTIN v. DE LA GARZA.
### No. 8526.

Court of Civil Appeals of Texas. San Antonio.
Jan. 21, 1931.

Rehearing Granted March 18, 1931.
Rehearing Overruled April 29, 1931.

Bismark Pope, of Laredo, for appellant.

Mann, Neel & Mann, of Laredo, for appellee.

SMITH, J.

On original disposition this court reversed the judgment upon the conclusion that there was no evidence raising the issue upon which the judgment below was predicated. Upon rehearing we have very carefully reconsidered and analyzed the evidence, and have reached the conclusion that we were in error in the holding mentioned.

We reiterate the statement made in the original opinion, that "Appellee conceded, by affirmative pleadings to that effect, that he was a member of decedent's family and household; that he was a nephew and godson of decedent, and that a 'great love and affection' existed between them. The rule applicable in such situation was well stated by Associate Justice Moursund for this court to be: 'The rule is well settled that, where persons are living together as one household, services performed for each other are presumed to be gratuitous, and an express contract for remuneration must be shown or that circumstances existed showing a reasonable and proper expectation that there would be compensation.' Rockowitz v. Rockowitz (Tex. Civ. App.) 146 S. W. 1070, 1071." This case must be tested by that rule, and in order to entitle him to recover it was incumbent upon appellee to establish by evidence sufficient to take the case to the jury that "circumstances existed showing a reasonable and proper expectation that there would be compensation" for the services he rendered his uncle. Our conclusion is that appellee met that requirement. As the lips of the promisor had been closed in death, and the promisee was cut off from testifying about transactions had with the promisor, any agreement or understanding had between them in private could not be proven by direct evidence, rendering it necessary to resort to circumstances and the acts and words of the parties apart from each other in order to ascertain the true facts. In such case every circumstance tending to disclose the attitude and intent of the parties was admissible. Pounds v. Minter (Tex. Com. App.) 13 S.W.(2d) 351; Von Carlowitz v. Bernstein, 28 Tex. Civ. App. 8, 66 S. W. 464; Clarkson v. Whitaker, 12 Tex. Civ. App. 483, 33 S. W. 1032. With these several rules in mind, we will state the evidence from appellee's standpoint, as must be done in view of the jury finding in favor of appellee thereon:

It appears from the record that appellee was taken into decedent's home at the age of eighteen and attended school from there for two years. Appellee then worked in various positions for two years, when he obtained employment in the Laredo post office, and during the succeeding ten years, up to the time of decedent's death, he continued to fill that position, as he still does. During the whole period of twelve years he worked steadily, on substantially full time, drawing substantial salaries, and during all that period, except for two or three months at one time, roomed at the decedent's home, but took his meals elsewhere, at his own expense. He paid the house servant to take care of his room. The decedent was in ill health during that period, particularly in later years. He suffered with rheumatism, which gradually grew worse, so that, at least during the last few years of his life, he was unable to leave his bed. His condition was rendered more difficult by some sort of inability to control the functions of his body, and was of such nature that his women servants refused to attend him, and

left such attention to appellee, to whom the decedent looked for, and of whom he exacted, such services. Appellee performed these services throughout the period they were required. He was always subject to the old man's call, and answered his calls throughout the nights, for which purpose he generally remained indoors, denying himself the relaxations and social recreations open to and generally indulged in by the young men of his time. At one time, on account of the presence of a tubercular in decedent's home, appellee obtained a room elsewhere for a period of three months, but visited and gave attention to the decedent, served his needs during that period, and finally returned to the home at decedent's request. For a period of a year or two he brought his younger brother to decedent's home, and maintained him there at appellee's own expense for the purpose of having him care for decedent in the latter's helpless condition. These duties were of such unpleasant and repulsive nature that the younger brother ran away from them, and went to another city to live, and the whole burden fell back upon appellee. At one time appellee contemplated moving to another city to better his condition, but decedent persuaded him to remain and care for the latter as he had been doing. Appellee ran errands for decedent, paid his taxes for him, borrowed moneys for him, collected rents for him, relieved him of all necessary tasks he could not himself accomplish. Appellee ministered to the decedent, rubbing liniments upon his rheumatic limbs, giving him his medicines, cleaning, washing, drying his person and clothes, cleaning his bed. These menial and revolting attentions and services were performed by appellee, notwithstanding decedent kept servants in the house. The decedent did not compensate appellee in any way for these services. But he often acknowledged them and their value to him by telling others he intended to compensate appellee therefor by leaving his estate to appellee at his death. It is true the jury found that decedent and appellee had no express or even implied agreement whereby the former was obligated to leave his entire estate to the latter, and the evidence was such as to warrant this finding. But it is equally true that by the declarations of his intention to devise his estate to appellee in consideration of the latter's services to him, the decedent thereby acknowledged that such services were performed, that they were of substantial value to him, and that appellee was entitled to compensation therefor. So is it true that the decedent's intention to compensate him was communicated to appellee at various times in one way or another, and that from these communications appellee was warranted in believing that decedent would compensate him in one way or another, and that he continued to perform the services in that belief. We conclude that all

these facts and circumstances, when considered together, as they must be, were sufficient to take the issue to the jury, and that the jury's findings thereon were conclusive upon the trial court, as it is upon this court. As the amount of the compensation was never expressed by the parties, the question thereof was for the jury, whose finding of $2,500 cannot be said to be unreasonable, as a matter of law, and is therefore likewise conclusive.

■ In the original opinion we expressed the conclusion that the testimony of appellee, that on a certain occasion he was offered and refused an advantageous position with a Tampico bank, was inadmissible in the absence of further proof that decedent knew of such offer and induced appellee to decline it in order that decedent might secure his continued services and compensate him therefor. We have concluded upon further consideration, however, that, even if this testimony was inadmissible as a circumstance bearing upon the main issue in the case, which is doubtful, the error of its admission was too insubstantial to require reversal.

■■ It appears from the record that during their deliberations some of the jurors discussed the fact of appellee's disqualification as a witness to testify to transactions and conversations with the decedent, and speculated upon the assumed probability that had appellee been allowed to testify in such matters he would have testified that the decedent expressly agreed with him to compensate him for his services. Appellant contends that this constituted such jury misconduct as to require reversal. We overrule this contention. It was natural that the jurors should indulge in such speculation as a part of the mental processes by which they arrived at their verdict. The courts will not examine into and analyze and overturn those processes for the purpose of setting aside verdicts, unless, indeed, it is shown that the jury have received and given weight to material testimony not in the record.

■ Among the grounds set up in his motion for new trial, appellant urged certain newly discovered evidence. The trial court properly overruled this ground. The proffered testimony was cumulative of testimony given upon the trial by certain police officials, and was not of such nature as to justify the granting of a new trial for the purpose of letting in that testimony. Moreover, appellant did not set up any facts showing diligence towards discovering such testimony for use upon the trial. It is true that appellant alleged in his motion for new trial that the proffered testimony "was not known to him prior to or at the time of the trial of this case, or at the time of the entry of judgment, and which he could not have learned prior to that time by the use of diligence and of which he has just come into knowledge." These gener-

160

al conclusions as to diligence were insufficient in the absence of allegations of specific facts in support of those conclusions. It is not deemed necessary to discuss the remaining contentions urged in appellant's brief, which will be overruled.

The original opinion rendered herein will be withdrawn, appellee's motion for rehearing will be granted, and the judgment will be affirmed.