## McBRIDE v. PONDER.

### No. 12281.

Court of Civil Appeals of Texas.
San Antonio.

June 27, 1951.

Rehearing Denied Sept. 5, 1951.

254

Kelley, Looney, McLean & Littleton, Edinburg, for appellant.

Cox, Patterson & Freeland, McAllen, for appellee.

POPE, Justice.

Appellee, J. W. Ponder, instituted suit and recovered judgment on a jury verdict

against D. F. McBride, a commission merchant. Ponder alleged that he loaned $8,000 to Wofford Vegetable Company, which several days later gave him an assignment of the net proceeds from ten certain cars of tomatoes shipped on consignment through McBride, the commission merchant. McBride had notice of the Wofford Vegetable Company's assignment to Ponder, as evidenced by a letter he wrote Ponder wherein he agreed to honor the assignment by paying Ponder the net proceeds from those ten outstanding cars. This case concerns the meaning of the term "net proceeds."

On November 21, 1948, Wofford Vegetable Company sought and obtained a loan of $8,000 from J. W. Ponder, which funds the Company needed in its season's tomato shipments. At that time, the Company was preparing to ship ten carloads of tomatoes to market through D. F. McBride as commission merchant. McBride handled the shipments and collected the proceeds from the sales of the tomatoes. Ponder, to better protect himself against loss of the money advanced to Wofford Vegetable Company, asked the Company to assign those proceeds to him. Pursuant to this request the Company on November 26, 1948, gave notice to McBride that it had assigned the net proceeds from the tomato sales to Ponder, and McBride wrote Ponder a letter wherein he expressly recognized the assignment, as follows:

"Dear Mr. Ponder:

"This is to advise you Mr. Ernest Wofford has instructed us to make checks payable to you on proceeds of all cars, not to exceed $6,000.00, which we are handling for his account, and further advise that as fast as accountings are in we will issue account sales in your name and make checks accordingly to cover net proceeds on all outstanding cars.

"Sincerely yours,
"McBride Produce Company
"D. F. McBride"

Unknown to Ponder, at the time McBride recognized the assignment, the Wofford Vegetable Company also owed McBride a pre-existing debt for loans he had made. Within a few days after November 26, 1948, the ten outstanding cars of tomatoes were sold on a much weaker market than had been expected, and shortly thereafter the Vegetable Company became bankrupt. McBride retained the proceeds received from the tomato sales and applied those proceeds against the pre-existing debt the Vegetable Company owed him rather than delivering any of the proceeds to Ponder. The sharp point of conflict between Ponder and McBride is which one was entitled to the proceeds of the tomato sales.

The cause was submitted to the jury on one special issue which inquired whether on November 26, 1948, the date of McBride's letter recognizing the assignment to Ponder, there was in Hidalgo County a usage and custom to use the words "net proceeds" to mean that deductions from gross proceeds of a sale included not only accommodation advances on specific cars but also pre-season advances and general running account balances. The jury answered the issue in the negative, the result of which answer denied McBride the right to deduct his loan from the proceeds of the tomato sales.

Appellant urges that the trial court committed error (1) in excluding evidence of the circumstances attending the writing of the letter; (2) in refusing to submit certain requested special issues inquiring about the meaning of the letter of November 26th; (3) in refusing to submit a special issue inquiring whether Ponder was a partner or joint adventurer with Wofford Vegetable Company; (4) and in refusing to grant a mistrial for jury misconduct. We have examined the other points which are briefed, but we find no reversible error in them.

The parties are in agreement concerning the gross proceeds received from each of the ten cars and the fact that an assignment was made. They also agree that "net proceeds," as used in the letter, contemplated deductions for all freight, icing, repacking and commission charges. Ponder received none of the proceeds from any of the sales of the cars of tomatoes, and no account sales were ever issued in

his name. To understand the nature of the court's exclusion of the evidence complained about, it is necessary to keep in mind the exact point of controversy. McBride claimed a factor's lien on the unsold tomatoes and contended that the letter, properly interpreted, entitled him to collect his pre-season loan out of the proceeds of the tomato sales before paying over any sums to Ponder. Ponder contended that "net proceeds" as used in McBride's letter forbade McBride's taking out the preseason loans. It becomes necessary with the issue thus drawn to determine whether "net proceeds" contemplated the deduction of the general pre-season loans. The term does not have a fixed and certain meaning. 66 C.J.S., Net Proceeds, pages 7–8. Parol evidence was admissible to show the real sense and meaning of the term. American Employers' Ins. Co. v. Hookfin, Tex.Civ.App., 33 S.W.2d 801. Both parties presented evidence touching the general custom in the community where the parties resided, and the jury, based on sufficient evidence, decided that the general customary interpretation of "net proceeds" forbade McBride's deduction of pre-season loans. McBride, however, urges that he should have been permitted to show the understanding of the parties. This he undertook to do by offering witnesses who, the record shows, would have testified about conversations between Wofford and his agent with McBride and his office staff prior to and at the time McBride wrote the letter. Such conversations between those persons out of the presence of Ponder could not be explanatory of Ponder's understanding. His understanding was gathered from the letter since he did not participate in those conversations conducted out of his presence and without his knowledge. While we recognize the rule that conversations and statements of the parties at the time of or just previous to the execution of a contract between them may be admissible for the purpose of aiding in its construction, McBride's intent which was uncommunicated to Ponder cannot affect the meaning of the letter. Trinity County Lumber Company v. Ocean Accident & Guarantee Corporation, Tex.Com.

App., 228 S.W. 114. "Parties are bound by the meaning of the words used in an agreement as properly interpreted, even though one of the parties believes that the words mean something different, unless the other party knows of such mistake." 12 Am.Jur., Contracts, § 136. "While under some circumstances the understanding of a party to an agreement is of some importance in interpreting it, what one party to an agreement understands or believes does not ordinarily govern its construction, unless such understanding or belief was induced by the conduct or declaration of the other party or was known to the other party." 12 Am.Jur., Contracts, § 231. McBride's letter, construed in this manner, effected a complete waiver of any liens he owned and was a recognition of Ponder's prior right to the "net proceeds." Evans-Snider-Buell Co. v. First Nat. Bank, 15 Tex.Civ.App. 163, 39 S.W. 213.

We have examined the excluded evidence which was developed by bill of exception. It shows that McBride, in his conversations out of Ponder's presence, said that he was willing to give Ponder a letter which stated that Ponder would receive any "proceeds" left after McBride had first deducted his advances. The excluded testimony would show that McBride orally stated that he first would deduct all of his loan from the proceeds. The letter he actually wrote did not mention his loan and that fact continued to be unknown to Ponder. The meaning of the ambiguous words was explainable by extrinsic evidence, but such evidence could not change the terms of the instrument by appending new and different words and provisions to it. The excluded testimony concerned a kind of letter different from and contradictory to the one McBride actually wrote. Garza v. Klepper, Tex.Civ.App., 15 S.W.2d 194. The contention that Mr. Wofford, at the time McBride wrote the letter of November 26th, was acting as Ponder's agent, so as to charge Ponder with the knowledge of Wofford, is against the overwhelming weight of the evidence. We find no error on the part of the trial court in excluding the evidence.

· The court refused four of appellant's requested issues, which separately inquired whether the parties intended that the net proceeds to be paid to Ponder under the letter of November 26th would be the proceeds remaining after McBride's account had been fully satisfied; whether the amounts owing Wofford Vegetable Company to McBride were to be satisfied before there were any net proceeds profits under the letter of November 26th; whether the accommodation advances made by McBride to Wofford Vegetable Company were to be deducted in determining the net proceeds as used in the letter of November 26th; and whether the usual practices and procedures in the produce business in the locality would permit McBride to deduct cash advances made to the Wofford Vegetable Company before the payment of any proceeds to that company.

█ The charge submitted the controlling issue, which was joined by the pleadings and disputed by the admissible evidence. The sense of defendant's requested issues was included in the clear issue submitted, and the court was not called upon to submit other and various phases or shades of that issue. Rule 279, Texas Rules of Civil Procedure; Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951; Gulf, C. & S. F. Ry. Co. v. Jones, Tex.Civ.App., 221 S.W.2d 1010; Gillette Motor Transport Co. v. Whitfield, 145 Tex. 571, 200 S.W.2d 624; Id., Tex.Civ.App., 197 S.W.2d 157; Rainwater v. McGrew, Tex.Civ.App., 181 S.W.2d 103; Texas & New Orleans Ry. Co. v. Sturgeon, 142 Tex. 222, 177 S.W.2d 264; City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 961, 159 A.L.R. 125.

██ The court also refused to submit an issue inquiring whether Ponder was a partner or a joint adventurer in the Wofford Vegetable Company by reason of a prior written agreement between Mrs. Ponder and the Wofford Vegetable Company in exchange for the Company's agreement to pay her a percentage of the company's net profits earned between November 8, 1948, and June 1, 1949. We do not pass on the counterpoint urging the failure to prove all the elements of partnership or joint adventure, since the existence of a partnership or joint adventure would not alter the judgment rendered. This suit was asserted against a third person and not against a member of a partnership. It relates to that person's express agreement as embodied in his letter to Ponder and involves segregated and a limited number of items. An accounting was made concerning those limited items covering shipments which were all made within the space of six days. The trial court properly refused the special issue, since a finding of partnership would not have avoided the judgment. Where by express agreement of partners, segregated items of partnership ventures are taken out of the general partnership account, one partner may sue another partner without a full partnership accounting. McKay v. Overton, 65 Tex. 82; Glass v. Wiles, Tex.Sup., 14 S.W. 225; Mullins v. Archer, Tex.Civ.App., 176 S.W.2d 763; Clamp v. Nolan, Tex.Civ.App., 300 S.W. 105; Chipley v. Smith, Tex.Com.App., 292 S.W. 209; Schwarz v. Lee, Tex.Civ.App., 287 S.W. 519; Annotations 58 A.L.R. 626; 21 A.L.R. 60–65.

Appellant also urges that the jury was guilty of misconduct. The jury found that no custom existed in Hidalgo County which permitted McBride, the commission merchant, to deduct general accommodation advances from gross proceeds in arriving at "net proceeds." The motion for new trial was supported by the affidavits of two jurors which state that a majority of the jurors believed the exact contrary. The affidavits state what the jurors thought about certain evidence. This amazing confession by the jurors is explained by their further statements that they believed their finding was unimportant and would be overriden and superseded by the letter of November 26th.

█ The meaning of that short letter turns upon the meaning of the phrase "net proceeds," and the meaning of that phrase was the battleground for the entire cause of action, with both parties directing their assaults upon its construction and meaning. Touching its construction and

meaning, after both parties had centered their attention upon the words, the court submitted a single issue to determine its usual and customary meaning. To permit the jurors to say they could answer a single issue exactly opposite their consciences in the erroneous belief that the customary meaning of the only disputed phrase in the letter was of no moment is in defiance of the intellect of jurors who can read and write. The court in refusing to hear evidence to show the truth of the affidavits and the motion, has in effect held that such alleged misconduct, even if testified about at length, when considered with the whole record, is so illogical as to be unworthy of belief and improbable. In that conclusion we concur. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028; Maddox v. Texas Indemnity Ins. Co., Tex. Civ.App., 224 S.W.2d 495; Martin v. De la Garza, Tex.Civ.App., 38 S.W.2d 157; Bradley v. Texas & P. Ry. Co., Tex.Com. App., 1 S.W.2d 861, 863.

The judgment is affirmed.