**James C. YOUNG, Appellant,**

v.

**CITY OF PEARLAND, BRAZORIA COUNTY, Texas, Appellee.**

No. 15232.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 29, 1968.

Rehearing Denied March 21, 1968.

Paul Ferguson, William W. McNeal, Alvin, for appellant.

Jack Harrison, John S. Brukner, Alvin, Thomas J. Graham, Houston, for appellee.

COLEMAN, Justice.

This was a suit for specific performance of an alleged contract to convey certain water lines and meters. The trial court withdrew the case from the jury and granted the prayer for specific performance.

This suit was based on an option agreement executed by James C. Young and the City of Pearland on June 4, 1964. This instrument reads:

THE STATE OF TEXAS ⎱
COUNTY OF BRAZORIA ⎰

THIS RIGHT OF PURCHASE AGREEMENT made and entered into on this the 16th day of August, A.D. 1963, by and between the CITY OF PEARLAND, a municipal corporation, acting by and through its duly authorized officers, the undersigned, hereinafter called "CITY" and JAMES YOUNG, as owner and developer of a certain Subdivision in the City of Pearland, Brazoria County, Texas, hereinafter called "DEVELOPER",

WITNESSETH:

That the DEVELOPER is the owner and subdivider of a certain tract of land located within the City of Pearland, Brazoria County, Texas, and that he has subdivided the same into lots, blocks, streets, alleys and easements for the purpose of providing building sites for homeowners and other types of improvements and to install for the use and benefit of the residents of such subdivision, a water system and has presented the proposed Plat and Dedication of said Westminister Subdivision for the approval of the City Council as a subdivision to the City, together with his plan for the construction of the water system within such Subdivision; and

WHEREAS, the CITY contemplates that they will, at some future date, organize and develop a municipal water and sewer system for the residents of the City of Pearland and desire to have the right of purchase of such water facility that may be installed in the Westminister Subdivision by the DEVELOPER, and the DEVELOPER has agreed to sell and convey such water improvements to the CITY as reflected by a Motion that was entered in the Record of Minutes of the City Council of the City of Pearland on this date, in which the said DEVELOPER agrees to sell to the CITY all water lines, without cost to the CITY and CITY shall have the right of purchase of any meters and meter connections at a rate of Forty ($40.00) Dollars per meter and the further right of the CITY to purchase the water well, pump and facilities attached thereto at its fair market value at the time of such purchase by the CITY. The DEVELOPER has further agreed that the CITY shall have the right to increase the size of the water conduit pipe along the Old Alvin Road from that reflected by the proposed Plat, by the CITY paying the difference or additional cost

in the installation of such pipe selected by the CITY in excess of the proposed six inch (6") water line.

NOW, THEREFORE, in consideration of the premises and the further consideration of the acceptance for filing and recording, the Plat and Dedication of WESTMINISTER SUBDIVISION by the City of Pearland, the DEVELOPER agrees that when the CITY has organized and developed a municipal water and sewer system for the use of the residents of the City of Pearland, that the CITY will have the right of purchase of all water meters and connections installed by DEVELOPER in said Westminister Subdivision at a cost of Forty ($40.00) Dollars per meter tap and the further right of purchase of water well, tank, pump and attendant facilities at its fair market value at the time the CITY desires to acquire title and possession and the DEVELOPER further agrees that he will execute the necessary bills of sale, assignments, transfers and conveyances to all facilities pertaining to the water system in Westminister Subdivision to the said City of Pearland, upon CITY giving at least thirty days notice in writing of its desire to acquire possession and ownership of same at the price above stated.

It is further agreed that this right of purchase shall extend to the parties hereto, their heirs, successors, administrators or assigns.

EXECUTED at Pearland, Texas, on this the 9 day of June, A.D. 1964.

(Signatures and acknowledgements)

Appellant was developing the Westminister Subdivision into residential lots. The City of Pearland had no City water and sewage system at that time but planned to develop such a system in the future. A part of the City was included within a water district, but appellant's property was not within the district and could not be serviced by it. Appellant wished to improve his subdivision with a water system that could be integrated into the proposed City system. His engineer prepared a plan for such a water system which was presented to the City Council for approval on August 15, 1963, and it was approved.

Thereafter the City of Pearland established a municipal water system. The minutes of a special meeting of the City Council for November 22, 1965, reflect that the meeting was called for the purpose of considering a request of Mr. Olen O'Day concerning "the water well and water lines in Westminister Subdivision," and that he reported that 35 meters had been installed and that eight more were to be installed at existing houses. He stated that the total investment for water lines amounted to $8,507.54 "for material only or including the well and tank the sum of $11,961.15 for material only."

The minutes then recite that following due discussion a motion was made and seconded "that James C. Young be notified by registered letter (return receipt requested) that the City is ready to proceed under the terms of a contract between he and the City dated June 9, 1964. This contract stipulating that thirty days notice be given to James Young in the event the City desired to acquire possession and ownership of same. Mr. Young to be notified of a Council meeting on December 30, 1965." The motion passed, and thereafter the City Secretary mailed to Mr. Young the following letter (formal parts omitted):

The City of Pearland is ready to proceed under the terms of a contract that you made with the City dated June 9, 1964. Copy of the contract is enclosed for your reference.

Since the contract states that the City is required to give you at least thirty days notice, we expect to meet with you on Thursday night, December 30, 1965 in the City Hall at 7:30 P.M.

Subsequently another letter was sent to Mr. Young, stating: " * * * Because of the holidays your compliance with the date as set forth in our letter to you dated November 23, 1965 has been extended by City Council until Thursday night, January 6, 1966 at the City Hall at 7:30 P.M. * * "

A meeting was apparently held on that date with Mr. Young in attendance. After discussing the question of the "water system" in Westminister Subdivision, the Council determined to submit the option agreement to the City Attorney for a written opinion concerning its legality and interpretation to be submitted at the regular meeting on January 27, 1966.

Mr. McClellan, the City Secretary of the City of Pearland and its chief executive officer under the supervision of the Mayor and City Council, testified:

Q   Now, Mr. McClellan, to your knowledge, did you or anyone, any officer of the City offer to Mr. Young to buy, pursuant to the contract, the water lines and the meter connections for $40 per meter?

A   Accepted with the—when the letter was mailed in about November, 1965.

Q   Who sent that letter?

A   I did.

Q   And did you hear from Mr. Young, when you offered to purchase the water lines?

A   Not until the night of the Council meeting, about January 6th.

Q   And did Mr. Young accept or reject the offer to purchase the water lines?

A   He rejected.

He also testified, in identifying the quoted letter to James C. Young, that it was a letter notifying him that the City was ready to proceed with their option to take over "the Westminster water system".

On May 3, 1966, the City Council instructed the City Attorney to proceed with the necessary legal steps to take over the water lines in Westminister Subdivision as per contract. This suit was filed in June, 1966. By this suit the City tendered to Mr. Young the sum of $40.00 per meter installed and demanded specific performance of the option agreement insofar as it relates to the water lines and meters. The petition states that the City does not desire to purchase or to exercise its option to purchase the water well, pump and attachments.

The appellant answered with a general denial and a plea that the City tendered only part performance under the "purported" option. The answer denied that the "purported" option was valid, but alleged that if it was valid, it is an indivisible contract, and further, alleged that the City failed to exercise good faith in exercising its "alleged" rights under the "purported" option. By trial amendment appellant alleged that there was no consideration for the option agreement, no consideration stated for conveyance of the water lines, and raised questions concerning the remedy of specific performance in the case of personalty having no intrinsic value, where there is an adequate remedy at law by way of damages.

Appellant's answer also contained a counter-claim for the fair market value of the entire water system based on the premise that the City had exercised its option and thereby created a bilateral contract.

In its judgment the trial court found as a matter of law that the option agreement "together with the record of the minutes of the City Council of the City of Pearland on the 16 day of August, 1963, is not ambiguous and is divisible in that the City of Pearland has the right to acquire the water lines and the meters, and meter connections without acquiring the water well, tank, pump, and attendant facilities, * * *," and directed appellant "to sell and convey and to execute the necessary bill of sale,

assignment, transfer and conveyance to the water lines and meters and meter connections located in the Westminister Subdivision in the City of Pearland, Brazoria County, Texas, and the water lines located in the streets of Westminister Subdivision shall include the water line to the well and pump up to the point the water line leaves the public street and enters and crosses into the private property upon which the water well, tank, pump and attendant facilities are located, said instrument specifically exempting from said sale the water well, tank, pump and attendant facilities * * "

■ An interesting question arises concerning the nature of the option agreement. Is it a contract supported by sufficient consideration, or merely a continuing offer which the City could accept until withdrawn by appellant? The consideration recited is the acceptance for filing and recording of the Plat and Dedication of Westminister Subdivision by the City of Pearland. The evidence shows conclusively that the plat and dedication of the subdivision was approved by the City of Pearland some two months prior to the date of the Council meeting at which the proposed option agreement was discussed and approved by the Council. Appellee introduced evidence that the plan for the water system was presented to the Council at this same meeting and was approved by Council. The option agreement contains a reference to the plan for the construction of the water system. The minutes of the meeting of August 15, 1963, coupled the approval of the planned water system with the agreement for an option to purchase. These minutes were referred to in the option agreement. By signing the option agreement, appellant has impliedly agreed that the minutes accurately reflect the agreement of which they constitute a memorial. A reasonable construction of the minutes is that the approval of the plan for the water system was the agreed consideration for the option agreement. While appellant testified that he received nothing of value for his promise, the performance by the City of its implied promise to approve the water plan, as a matter of law, constituted the payment of a valuable consideration. The agreement, therefore, is a conditional contract binding on appellant. McBride v. Ponder, 242 S.W.2d 253 (Tex. Civ.App., San Antonio, 1951); Corbin on Contracts, Vol. 1, § 31, p. 120, and § 143, p. 614, et seq.; Id., Vol. 1A, § 262, p. 495.

■ The trial court erred in withdrawing the case from the jury and decreeing specific performance of the contract in part only. In the contract the appellant agreed to "execute the necessary bills ·of sale, assignments, transfers and conveyances to *all facilities pertaining to the water system* * * * upon City giving at least thirty days *notice in ɯriting* of its desire to acquire *possession and ownership of same* at the price above stated." (emphasis added) This is the only provision relating to notice found in the contract. Clearly the only way the offer to sell the water well, storage tank, pump and storage facilities could be accepted would be by notice of intention to exercise the option since the amount of the purchase price had not been agreed upon in the contract. A contract to purchase was created if the letter of June 9, 1964, constituted an acceptance of the offer to sell contained in the option contract. The letter stated that the City was ready to proceed under the contract and specifically called attention to the notice provision of the contract. It constituted a written acceptance of the offer to sell "all facilities pertaining to the water system". A contract binding upon both parties was created upon delivery of the letter to appellant. A promise on the part of the City to pay the fair market price of the well, pump, etc., will be implied. This interpretation of the letter is consistent with the testimony of Mr. McClellan previously quoted, as well as the minutes of the meeting of the City Council of November 22,

1965.   17 Am.Jur.2d, Contracts, § 32, pp. 369–371; Id, § 44, pp. 382–383.

Since a bilateral contract for the purchase of the entire water system existed at the time this suit was brought, appellee cannot insist that appellant perform in part only.  In its pleadings appellee not only did not offer full performance on its part, but expressly stated that it did not desire to purchase the water well, storage tank, pump and appurtenances.   In the absence of facts sufficient in equity to excuse appellee from its obligation to fully perform under the terms of the contract, appellee cannot have specific performance without offering or tendering full performance on its part. 52 Tex.Jur.2d, § 47, p. 577 et seq.; Id., § 60, pp. 598–599; Id., § 72, p. 612.

Since a new trial is necessary it is proper to state that the contract requires appellant to convey, as a part of the water system, his right, title, and interest in and to the water lines without other consideration than that agreed upon for the water meters plus the fair market value of the well, pump, tank and attendant facilities.  This opinion should not be construed as establishing the proposition that this contract is sufficiently definite in its description of the property to be conveyed to support a cause of action for specific performance, or that such a remedy is available as against appellant in view of his testimony that he does not own the subdivision.  Neither have we determined whether appellant has dedicated to the public any part of the system, or whether the contract can be specifically enforced if it should be determined that the promise to convey the water well, tank and water lines, located outside of dedicated easements or streets, is too indefinite with respect to the rights to be included in the land on which these facilities are located. These questions were not presented by the briefs of the parties on this appeal.

The judgment of the Trial Court is reversed and the cause is remanded.

Reversed and remanded.