FLEMING v. WORKS et al. (No. 3569.)

Court of Civil Appeals of Texas. Texarkana. July 5, 1928.

Lasseter & Simpson, of Tyler, for plaintiff in error.

Marsh & McIlwaine and Bryan Marsh, all of Tyler, W. W. Gibbard, of Dallas, and A. L. Tisdale, of Wills Point, for defendants in error.

HODGES, J. Plaintiff in error, Fleming, sued the defendants in error J. D. Works, W. B. Marsh, Lee Marsh, and O. M. Boren for title and possession of an undivided half interest in the oil and gas and other minerals in a tract of 160 acres of land situated in Smith

county. It was alleged that Works sold the land to Huey without reserving any interest in the minerals, and that after its execution the deed was altered by Works, or caused to be altered, by adding a clause reserving to the vendor one-half of the mineral rights. It is further alleged that the alteration was made without Huey's knowledge or consent; that the plaintiff Fleming thereafter acquired Huey's rights under a deed, and now owns the land and all the rights which the deed, as originally written, conveyed to Huey. It is alleged, in the alternative, that if the reservation was not added without Huey's consent, then its inclusion in the deed was the result of a mutual mistake and was not known to the plaintiff until March, 1927. The defendants in error answered generally and specially. It is not necessary to further state their pleadings.

The evidence shows that the land was sold and conveyed by Works to G. L. Huey in July, 1921, and the deed was filed for record the same day it was executed. As the consideration for the conveyance Huey transferred to Works some vendor's lien notes executed by another party, the assumption of a debt against the land, and the execution of four promissory notes aggregating $5,077, in which a vendor's lien was retained. Immediately following the description of the land the deed contains the following exception: "Except one-half of the oil and mineral rights, which are retained by the said J. D. Works." It is that exception which the plaintiff alleged was inserted after the deed was executed, or by mistake. The land was subsequently purchased by the plaintiff at a foreclosure sale made under a deed of trust executed by Huey. Upon the issue of whether the exception above referred to was made before or after the execution of the deed the testimony was conflicting. The jury found that it was made before the deed was executed, and there is no contention that the finding is not supported by the evidence. There was no evidence to support the charge that the reservation was the result of a mistake. The court entered judgment in favor of the defendants in error upon that finding of the jury.

What appears to be the principal ground relied upon in this appeal for a reversal of the judgment is alleged misconduct of the jury. The misconduct referred to is disclosed by the testimony of the juror Owens. The following is the substance of that testimony heard in the presentation of the motion for a new trial: Witness was foreman of the jury. Immediately after retiring the jurors began to discuss the principal issues involved in the case. There were two or three questions presented in the charge. They were considering the first question. When the ballot was taken it was shown that the jurors were divided. A majority were in favor of deciding that question against the defendants in error. After they took that ballot there was considerable discussion. Among the jurors who engaged in the discussion was Mr. Prestwood. The witness stated:

"Mr. Prestwood brought up the subject that it seemed that Mr. Fleming was more of a figurehead or an agent for the Gulf Company, and it seemed that he got $10 for handling the transaction; he didn't feel like he had much interest in it except as an agent for the oil company. I don't remember about anything being said in that connection with respect to the Gulf Company finding a possible flaw in the deed. After that statement was made it wasn't very long before another ballot was taken. I believe the next ballot was ten to two in favor of Mr. Works, whereas on the first ballot it had been either seven to five or eight to four the other way. * * * On the second ballot I was with the two or three. Finally the first issue was decided by the jury answering that the alteration was in the deed at the time Works executed and acknowledged it. The statement of Mr. Prestwood didn't altogether cause me to answer that question in that manner, but I thought possibly that as the majority had seen it that way that possibly it was correct. It did have something to do with me answering the question finally."

On cross-examination the witness stated that he understood the verdict rendered; he was not deceived or misled, and intended to render the verdict that was rendered; he heard Huey testify that Turnbull, the Gulf Production Company man, had visited him several times at his home about this land; further, that he testified that Turnbull was present at Tyler when the land was sold, and talked to him (Huey); that the evidence showed that Fleming bought the land, but witness did not remember every detail about it. He remembered that there was a deed offered in evidence showing that Fleming, on the same day he bought the land for $5,000, transferred it to LaRue for $10 and other valuable considerations. He understood the first question submitted by the court. He said:

"When I returned the verdict into court that Works didn't do it after its execution and delivery, I understood the question and intended it that way."

Another juror, Largent, testified that he remembered that Huey testified that Turnbull was present in Tyler with him when the sale was made, and that Turnbull told him (Huey), after the land was sold, that he was going to give him the surface rights in the 34-acre tract. He said:

"I remember, further, that Mr. Lasseter offered in evidence a deed where Fleming on the same day he bought this land transferred it to LaRue for $10 and other considerations. I remember that it was sold after foreclosure proceedings here, and that it brought enough money to liquidate all of the outstanding indebtedness, interest and attorneys' fees, and had about $200 left over; something like that. The case was

discussed between the first and second ballots, and it was in that discussion that something was said about it being a case between the Gulf Production Company and Mr. Works. I don't know whether that is the gentleman (Mr. Prestwood) who made that statement or not. It was one of the jurors."

The juror Prestwood was called, and testified, in substance: That he remembered Huey's testifying as a witness in the case, and what that witness said about his dealings with the Gulf Production Company. That Huey said while on the stand that he did not care how the case went, that all he was going to get was 34 acres of land from the Gulf Production Company. He said:

"I remember a deed being offered in evidence by Mr. Lasseter where Fleming, for $10 and other considerations, transferred this land to LaRue on the same day it was sold here. After that the jury's attention was called to Mr. Boren's testimony about the conversation that he had with Huey about a year before that. I think several of us spoke about it. * * * After this testimony of Huey's was discussed— that is, that Huey had told him (Boren) about a year before that Works owned half of it—the jury then arrived at a unanimous verdict I think."

He further testified:

"I don't know what was said in the discussion in the jury room about the Gulf Production Company. We all laughed about this boy (Huey), the remark he made about he was going to get 34 acres of land and the Gulf was going to get the balance. I dont remember that it was brought in that the Gulf was interested in the suit in that way. Don't remember anything about the Gulf being brought in the suit. We just laughed about the way that boy talked on the stand; he was unconcerned in it. I mean by that the witness Huey."

We agree with counsel for defendants in error that if the juror Prestwood made the statements attributed to him he was only expressing his conclusion from the evidence. It does not appear that the juror stated any independent fact which was not based upon the testimony adduced in the trial. Such opinions and conclusions of jurors, however erroneous, cannot be treated as misconduct requiring a new trial. If the juror had stated some independent fact not included in the testimony and which was calculated to influence the verdict of the jury a different situation would be presented. But under the facts disclosed by the record we are of the opinion that the court correctly overruled the motion for a new trial.

■ Plaintiff in error also contends that the exception found in the deed was a mere reservation of the right to enter upon the land and explore for minerals within a reasonable time, and did not constitute a retention of a perpetual right to the minerals. We do not agree to that construction of the deed.

The exception is not a conditional grant of an interest in the mineral rights, but is an express retention of the absolute and unconditional ownership of one-half of those rights. It carried no implied covenant to explore for minerals under the surface of the soil, but expressly retained the original proprietary dominion over the one-half interest.

The assignments are overruled, and the judgment will be affirmed.