ROY AKERS V. MRS. R. J. EPPERSON ET VIR.
No. 8058. Decided May 19, 1943.
(171 S. W., 2d Series, 483.)

*Moursund, Ball, Moursund & Bergstrom,* all of San Antonio, for appellant.

The finding that the ambulance was operated at an excessive speed and is contrary to and unsupported by the evidence. Cadillac-LaSalle Corp. v. Berry, 125 S. W. (2d) 1021; Green v. Hill, 4 Texas 465; Northeast Texas Motor Lines v. Hodges, 138 Texas 280, 158 S. W. (2d) 487.

*Johnson & Rogers* and *Nat L. Hardy,* all of San Antonio; for appellee.

MR. JUDGE TAYLOR of the Commission of Appeals delivered the opinion for the Court.

The San Antonio Court of Civil Appeals has certified a material question of law upon which a dissent in that court is

based, certifying same under the authority of Rule 463. The question is one of alleged misconduct, being specifically stated, whether the majority of the court committed error in overruling the 10th point set out in the brief of appellant, Roy Akers, filed in that court, which point is as follows:

"The (trial) court erred in refusing to grant plaintiff's motion for new trial for this, that the jury was guilty of misconduct *in that the juror Boswell recounted to the jury his personal experience and observation on other occasions on which he had observed skid marks by motor vehicles and stopping of cars by the skidding of tires; and, as a self-appointed expert, gave to the jury his opinion as to the speed of the ambulance based upon testimony as to the skid marks on the ground,* all of which was very prejudicial to plaintiff." (All italics in this opinion ours).

The certificate sets out that the suit was instituted by Roy Akers against Mrs. R. J. Epperson and her husband to recover damages in the sum of $1,000.00 alleged to have been sustained by Akers when his ambulance, driven by J. P. Riley, and a Dodge passenger car, driven by Mrs. Epperson, collided near the intersection of San Pedro and Park Avenues, San Antonio. The jury found upon special issues that Mrs. Epperson just prior to the collision was not driving in excess of twenty miles per hour and was not driving at an excessive rate of speed under the circumstances; that Riley at such time was driving the ambulance in excess of twenty miles per hour and, under the circumstances, was driving it at an excessive rate of speed; and that the speed at which the ambulance was being operated was a proximate cause of the collision. Upon this verdict the trial court denied Akers any recovery and he appealed. It is pointed out in the certificate that the jury finding that the ambulance was being operated at an excessive rate of speed was the finding of a material fact, and that if Boswell was guilty of the alleged misconduct it was with respect to a material issue in the case.

The provisions of Rule 327 invoked by the allegations of appellant's 10th point as to misconduct, are as follows:

"Where the ground of the motion (for a new trial for misconduct) is * * * *because of any communication made to the jury or that they received other testimony,* the court shall bear evidence thereof from the jury or others in open court, and may grant a new trial if * * * * the testimony received, or the communications made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the

trial of the case and from the record as a whole that injury probably resulted to the complaining party."

The pertinent testimony "both upon the hearing on the motion and on the trial of the case," is made available in the certificate,—that taken upon the main trial bearing upon the question being set out in Appendix B, and that of the jurors taken at the hearing on the motion (given by Boswell, C. O. Mattfeldt, foreman, and Roy Sager, another juror) being set out in Appendix A. The appended testimony heard upon the main trial will be first summarized, and is as follows: J. P. Riley testified on direct examination substantially that just before the collision he was driving the ambulance up San Pedro Avenue at about twenty miles per hour and saw the Epperson car coming from the opposite direction on the same avenue; that he at first thought the car was going to make a left-hand turn into the filling station on the avenue of his (Riley's) right-hand side and that he slowed down, taking his foot off the gas; that suddenly the Epperson car swerved "right in front" of him and "then it turned right and went right straight at" him; that at the time the car swerved it was about twenty or twenty-five feet from him; that he put on his brakes, "not very hard," and that when the car went straight at him he put his brakes on "pretty hard," but did not put them on "full force," he guessed, until "practically right at the moment of the collision"; that when he saw the Epperson car it appeared to be going the "normal rate of speed of the other traffic," about twenty or twenty-five miles an hour; that Mrs. Epperson's beginning to "cut over" (toward the filling station) just after she was "about thirty-five or forty feet" from him, was the first thing that caused him to pay very much attention to the Epperson car. A city policeman (Orin M. Sowell) and W. V. Ethridge testified that the skid marks leading up to the rear wheels of the ambulance were from about twenty-five to twenty-eight feet in length.

The following is a summary of the testimony of the three jurors relevant here, taken upon hearing of the motion for new trial. Boswell testified that he took part in the discussion of the skid marks in their relation to the speed of the ambulance and commented on the fact that the length of the skid marks would have a bearing on the speed of the ambulance. He said he stated it was his opinion *"under the evidence introduced"* that a vehicle of that particular type would be running forty miles an hour or more. He testified that he was an automobile mechanic and service-station man, and that on previous occasions he had

observed skid marks left by vehicles, but did not relate to the jury any specific case of observation; that he had had occasions many times, "as had all of the other members of the jury," to observe skid marks. When asked if he related to the jury that he was a garage man he replied that he did, but that "the jury knew that before we went in." (This statement, which is of a typical voir-dire fact, does not appear to be questioned). Being asked to tell what he did say he gave as the substance of it the following:

"I stated that to my knowledge a vehicle of that weight and in that condition, skidding twenty-eight feet, would be running forty or more miles an hour, and especially *when the witness sat* there in the witness stand and *stated he did not bring the vehicle to a sudden stop; that he slowed it down; and then* when he saw the accident was inevitable he *skidded twenty-eight feet.* My argument was that the vehicle was running forty or more miles per hour, *based entirely on listening.*"

Juror Sager stated Boswell "mentioned that the ambulance must have been going faster than twenty-five miles an hour"; that the "impression" he "gathered" from what Boswell said was that he had worked at a filling station and probably had had "quite a bit of experience with automobiles." Foreman Mattfeldt recalled that the evidence showed the skid marks left by the ambulance were from twenty-five to twenty-eight feet long and that there was a considerable discussion as to the speed of the ambulance as shown by the marks; that Boswell said the ambulance must have been going at an excessive rate of speed "because of the skid marks"; also that he and his brother had had frequent opportunity "to notice vehicles"; that Boswell was a rather positive individual and felt certain about the point that "due to the skid marks *the ambulance must have been traveling at an excessive rate,*" that is, "zooming down the street."

There is testimony, in addition to that appended to the certificate, that the ambulance was a "practically new" La Salle which "had less than 2,000 miles on it when it was wrecked"; also that the pavement at the time of the collision was dry.

The majority opinion upon appeal, written by Associate Justice Murray, overruled appellant's 10th point, and Chief Justice Smith contends in a dissenting opinion that it should have been sustained. It is stated by the majority that "jurors naturally weigh the evidence in the light of their experience in

life and their common knowledge," citing Blue Diamond Motor Bus Company v. Hale, 69 S. W. (2d) 228 (wr. dismissed), and that "there was nothing improper in Boswell giving his opinion of the evidence properly before the jury, and in stating to his fellow jurors his conclusions from the evidence."

It was Chief Justice Smith's opinion that during the deliberations of the jury Boswell made such statements of fact (those summarized above) concerning his experience and observations as a garage man and mechanic as to make his opinion as to the speed of the ambulance in its relation to the skid marks item of evidence, the opinion of an expert on the subject; that Boswell's statements that "the ambulance must have been traveling at an 'excessive' rate or 'zooming down the street' at a speed of forty miles or more per hour," were not only a giving of expert testimony to the other jurors, but were statements "not testified to, if not directly negatived, in open court." These statements, he contended, constituted misconduct and probably induced the jury's finding against appellant as to the speed of the ambulance, *especially in view of his (Boswell's) influence over the jury.*" He was not in accord with the opinion of the majority that the jury's finding that the collision was proximately caused by excessive speed of the ambulance, had *sufficient evidence to sustain it.* He apparently did not adopt the view of appellant that the finding was *"against the great preponderance of the evidence,"* nor does he appear to have been of opinion that there was *no evidence* to support the finding. It was his conclusion that such finding was, "under the undisputed facts," an "irrational and arbitrary" finding, and was induced by some "extraneous influence." This influence, in his opinion, was the "unusual intelligence" of Boswell and his "positive, if not domineering, character," together with his statements in the jury room. "These matters," continues the dissenting opinion in leading up to the discussion of the overt acts of misconduct alleged, "are adverted to as evidence of Juror Boswell's dogmatic attitude and of his obvious domination of the jury."

It appears from appellant's 10th point that it contains two closely related allegations of fact as constituting the misconduct complained of: 1) that *Boswell recounted to the jury his personal experience and observations made on "other occasions" of observing skid marks made by motor vehicles and the stopping of cars by the skidding of tires*: and 2) that Boswell, *"as a self-appointed expert," gave his opinion during the deliberations as to the speed of the ambulance based upon the testimony as to*

*"the skid marks on the ground."* The point contains, in connection with the two facts alleged, a charge by way of conclusion that Boswell *constituted himself an expert on the subject referred to.*

The question certified limits our consideration of the case to whether the majority of the court committed error in overruling appellant's 10th assignment which alleged the misconduct complained of. It is neither necessary nor proper for us to discuss the preliminary matters "adverted to" in the dissent, since it is our opinion that Boswell was not shown to have been guilty of the misconduct alleged.

It is well settled that cases must be tried in the court room and that a juror is not permitted to become a witness during the jury's deliberations and that it is misconduct for original evidence of material facts to be received by the jury during its deliberations. Hobrecht v. San Antonio & A. P. Ry. Co. (Civ. App.), 141 S. W. 579; Lincoln v. Stone (Com. App.), 59 S. W. (2d) 100. Litigants' rights are not permitted to be thus jeopardized. The present record, however, fails to disclose that such was the case. There was argument in the jury room on the ambulance speed issue as to whether it was being operated just before the collision at an excessive rate of speed under the circumstances. The foreman said there was considerable discussion of the question. Boswell said he took part in it. So far as the record discloses, all of the jurors discussed it. There was an abundance of evidence bearing on that issue to provoke discussion and argument of the issue referred to, and therefore the expression of opinions on the subject. If it be granted that the finding in question was based upon illogical reasons, or that erroneous conclusions were drawn from the evidence, that, without more, would not constitute misconduct. In the absence of overt acts of misconduct it is not permissible to "probe the minds of jurors or supervise their process of reasoning." 41 Tex. Jur. p. 849, sec. 101; Lewis et ux v. Halbert et al (Com. App.), 67 S. W. (2d) 430; Fleming v. Works (Civ. App.), 9 S. W. (2d) 365; Martin v. De La Garza (Civ. App.), 38 S. W. (2d) 157. Only the question certified is before us and no other. Unless Boswell made such statements to his fellow jurors as to show he was qualified as an expert witness on the speed issue in question he was not guilty of becoming an expert witness in the jury room. We find no such statements.

We are in accord with the majority holdings made in overruling appellant's 10th point as above quoted. The summary of the testimony appended to the certificate discloses that there

is no evidence to sustain appellant's first allegation of misconduct. Neither Boswell himself nor either of his fellow jurors testified that Boswell *recounted to the jury* his personal experience and observations on "other occasions" of observing the skid marks of motor vehicles and the stopping of them by the skidding of tires, or any facts of a similar nature.

There is no question but that Boswell gave his opinion as to the speed of the ambulance "based upon testimony as to the skid marks on the ground," as charged in the second fact allegations of appellant's 10th point; but there is no evidence to sustain the conclusion set out in the allegation that such opinion was that of an expert, "self-appointed," or otherwise. Boswell testified that there was an argument as to the speed of the ambulance *based on the evidence before the jury,* but that he did not relate to the jury any specific case of observations made on any previous occasions. There is no evidence that he did. His version of what he said, boiled down, is quoted in the above summary of his evidence, which see. It reflects that he based his argument as to the speed of the ambulance on his knowledge of "a vehicle of that weight" and on the testimony given on the trial, which, among other items of testimony, was one that it skidded twenty-eight feet after Riley "saw the accident was inevitable." According to Riley's testimony he was slowing the ambulance down before he recognized the collision was unavoidable, to which Boswell apparently gave weight. Boswell's version of what he said during the deliberations, quoted above, was in no wise contradicted by his fellow jurors. There is no evidence that Boswell purported to state what the weight of the ambulance was or what its condition was at the time of the accident. The only evidence reflected by the record that had any kind of bearing as to its weight and condition was that heard by all the jurors on the main trial to the effect that it was a practically new 1940 La Salle ambulance, and that it had been run less than 2,000 miles. Boswell gave his opinion and argued in support of it. He gave the jurors no facts, however, by way of expert testimony, or any material facts of any kind which they did not have when they went into the jury room, or that a juror would not have ordinarily. It is not probable that there are now any considerable number of jurors who have not had "frequent opportunity to notice vehicles," or had "quite a bit of experience with automobiles." The fact, without more, that a person is a filling station operator and mechanic and has had frequent opportunity to observe skid marks, does not set apart as expert his opinion from that of other persons on the question of how fast a vehicle is traveling when it begins to skid. The

skid marks are but one item of evidence, among many, that bear upon the question of the speed of the vehicle; and, in the absence of the witness' having made tests or special observations under given conditions, his opinion as to its speed just before kidding is not that of an expert.

Nor does it appear that Boswell in supporting his opinion with argument stated such facts as to stamp his opinion on the speed issue in question as that of an expert as distinguished from the respective opinions of his fellow jurors may have had on the question. The statements that Boswell and his brother operated "two gasoline stations"; that Boswell had "had quite a bit of experience with automobiles," and the other statements referred to were not such as to give his opinion on the speed question the background of experience by way of observations and tests necessary to stamp it as expert.

It follows from what has been stated that there are no facts to support appellant's alleged conclusions that Boswell testified in the jury room as a self-appointed expert. We find no evidence to support appellant's first fact allegation as to misconduct; also that the second allegation apart from the conclusion as to a "self-appointed" expert, does not allege misconduct. We answer the question certified, in the negative, that is, that the majority of the court did not commit error in overruling appellant's point No. 10. We express no opinion upon any of the other matters set up in the motion for new trial.

Opinion adopted by the Supreme Court May 19, 1943.