**TENNESSEE GAS TRANSMISSION COM-
PANY, Appellant,**

**v.**

**Varnum Kenyon HALL et al., Appellees.**

**No. 12766.**

Court of Civil Appeals of Texas.

San Antonio.

March 23, 1955.

wide, comprising approximately 1.199 acres of land, across a sixteen-acre tract of land owned by the Halls, for the purpose of constructing and maintaining a high pressure feeder pipe line for its natural gas transmission system.

The trial was to a jury and, based upon the jury's answers to the issues propounded, judgment was rendered in condemnees' favor in the total sum of $20,691.79, and Tennessee Gas Transmission Company has prosecuted this appeal.

Appellant's first point of error is as follows:

"The trial court erred in overruling Plaintiff's motion for a new trial in connection with Plaintiff's allegations of jury misconduct in receiving new evidence in the jury room, because the verdict was fundamentally defective due to the fact that while the jury was deliberating upon its verdict, and before a verdict had been reached, one or more of the jurors testified that Plaintiff condemnor could have gone around the boundary of Defendants' 16 acre tract, rather than diagonally across same; and that, in deciding to cut across such land with their pipeline, said company had acted arbitrarily, prompted by the desire to save a few lengths of pipe and a few dollars of expense—without regard to Mr. and Mrs. Hall's right, and irrespective of how much the land owners might be damaged by such a course—which testimony, clearly revealing bias and prejudice toward the pipeline company, although not properly before the jury from any source and not being knowledge common to the public in general, was discussed and considered by the jury; and such jury, or some of them, were influenced by such discussion, and were caused to render a verdict in favor of Defendants for a larger sum than they would have rendered had such new and inflammatory testimony not been introduced, which testimony and discussion constituted material misconduct calculated to and probably

Kelley, Looney, McLean & Littleton, Willard E. Dollahon, Edinburg, Baker, Botts, Andrews & Shepherd, Houston, for appellant.

Strickland, Wilkins, Hall, & Mills, Mission, for appellees.

W. O. MURRAY, Chief Justice.

This is a condemnation proceeding heard in the County Court at Law of Hidalgo County, Texas, wherein Tennessee Gas Transmission Company was condemnor and Varnum Kenyon Hall and wife, Betty Lou Hall, were condemnees. Condemnor was seeking an easement from 50 to 200 feet

did result in an improper verdict in this cause."

The first question is, Did the jury receive new evidence in the jury room? All the testimony heard on the motion for a new trial is to the effect that the jury did discuss the fact that the damage would have been less if the pipe line had gone around appellees' sixteen-acre tract rather than diagonally across the property. However, the conversation did not necessarily occur in the manner set out in appellant's first point. The trial judge having overruled motion for a new trial, it is our duty to construe the testimony given at the hearing on the motion for a new trial in a light most favorable to appellees, the evidence being conflicting and the burden of proof being upon appellant. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

The foreman of the jury, E. D. Forbes, is the one who is alleged to have given the testimony during the deliberations of the jury with reference to the pipe line going diagonally across the land rather than around the boundaries. There is a conflict in the evidence as to just what Forbes said: One of the jurors, Carl Hugo, while being questioned by counsel for appellant, was asked, "Do you recall what Mr. Forbes said?" Hugo gave the following answer: "I think he said that he even thought that the gas company would have damaged the land a whole lot less if they had gone around the boundary line instead of cutting diagonally through it; it would have done a lot less damage to Mr. and Mrs. Hall." If this is what was said, and under the above stated rule we must presume that it is, because this is the least harmful statement testified to, then the statement was not new evidence, because there was evidence in the record to support this statement, and it was in no way improper.

Furthermore, the record shows that one of appellees' counsel made an argument to the jury, without objection, along the same line as was made by the juror Forbes. The making of this argument by counsel to the jury is not here assigned as error in any way. Under such circumstances, appellant will not be heard to complain that one of the jurors repeated the same argument during the deliberations of the jury, which he heard made during the argument of counsel. Smallwood v. Edmiston, Tex.Civ. App., 246 S.W.2d 220. If the argument had already been made to the jury, its reiteration to the jury by Forbes could hardly have caused the jury to return an improper verdict. Rules 327 and 434, Texas Rules of Civil Procedure.

Appellant's second point of error is as follows:

"The trial court erred in overruling Plaintiff's motion for a new trial in connection with Plaintiff's allegations of jury misconduct in receiving new evidence in the jury room, because the verdict was fundamentally defective due to the fact that while the jury was deliberating upon its verdict, and before a verdict had been reached, one or more of the jurors testified that should Defendant landowner, Varnum K. Hall, ever use a 'chisel' or 'sub-soiler' plow upon his land, the tip thereof could strike Plantiff's buried high-pressure gas pipeline and either break same immediately or at least scratch some of the outside asphalt or tar wrapping off of the pipe, thereby enabling water in the soil, over a period of time, to rust and weaken said pipe at that particular place; that if such pipe should ever be so broken by a 'chisel' or 'sub-soiler', either directly or indirectly, there was great danger that the gas (escaping at high pressure) would ignite and burn Defendants' home now on the 16 acre tract in question, or some other house or houses that might, hereafter, be built on said Hall tract; that such danger existed, the possibility thereof would be apparent to any prospective purchaser of any of such land, and therefore would have a depressing or reducing effect upon the value of Defendants' land; that such new testimony about a 'chisel' or 'sub-soiler', so introduced to the jury in flagrant disregard of the charge of the Court,

was not properly before the jury from any source, and was not knowledge common to the public in general, yet was discussed and considered by the jury; and such jury, or some of them, were influenced by such discussion, and were caused to render a verdict in favor of Defendants for a larger sum than they would have rendered had such new and original testimony not been introduced, which testimony and discussion constituted material misconduct calculated to and probably did result in an improper verdict in this cause."

We overrule this point. The record shows without contradiction that the process of chiseling or sub-soiling land is a matter of common knowledge in and around Hidalgo County. Two of the jurors so testified and there was no evidence to the contrary. We must again presume that the trial judge, in overruling appellant's motion for a new trial, impliedly found that such process was a matter of common knowledge in the jurisdiction of the trial court. Jurors have a right to consider things which they know as a matter of common knowledge, along with the facts proven upon the trial. Head v. Hargrave, 105 U.S. 45, 26 L.Ed. 1028; 20 Am.Jur. 55, § 28.

A jury in arriving at a verdict may take into consideration matters of common knowledge though such facts have not been proven during the trial. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62; Lewis v. Halbert, Tex.Civ.App., 67 S.W.2d 430; Blue Diamond Motor Bus Co. v. Hale, Tex.Civ.App., 69 S.W.2d 228; Akers v. Epperson, 141 Tex. 189, 171 S.W. 2d 483, 156 A.L.R. 1028; 41 Tex.Jur. 852.

It was established by the testimony of the jurors Fred Buehler, Jr., and Carl Hugo, that in the jurisdiction of the trial court sub-soiling or chiseling operations, as discussed by the jury, were matters of common knowledge. Therefore, the trial court in determining whether the jury was guilty of misconduct had a right to take such common knowledge into consideration.

Arcola Sugar Mills Co. v. Rodriquez, Tex. Civ.App., 18 S.W.2d 844. We must presume that the trial court found that the jury in discussing the chiseling or sub-soiling process were discussing matters within their common knowledge, and not things of which they simply had a personal knowledge.

We think the record fails to show that appellant was prejudiced by the alleged misconduct of the jury. The main issue contested between the parties was as to whether appellees' land had a special value for subdivision purposes before the laying of the gas pipe line. Before the jury engaged in the alleged misconduct, they had answered the first issue to the effect that the 1.199 acres of land in the right-of-way across the sixteen-acre tract, had a reasonable market value of $1,737.50 per acre before the gas pipe line was laid across the property. This indicates that the jury had accepted the testimony offered by appellees that the property had extra value as subdivision property before the laying of the gas pipe line and had repudiated the testimony offered by appellant to the contrary.

The jury found that the 1.199 acres taken for the right-of-way had a value after the pipe was laid of $250 per acre. It was in connection with this issue that the alleged jury misconduct occurred. Only one witness was questioned as to this value, and his answer was $250 per acre. Thus the jury was following the undisputed evidence in answering question No. 2, as to the value per acre of the 1.199 acres taken for the right-of-way. The above alleged misconduct took place while the jury was deliberating upon their answer to issue No. 2, and, as pointed out above, they answered this issue in keeping with the uncontradicted evidence. If the jury had answered this issue in the most favorable manner possible to appellant it would have made only a slight difference in the total amount of the judgment.

The jury answered issue No. 3, in effect, that the remaining 14.801 acres of the sixteen-acre tract was worth $1,737.50 per acre before the laying of the gas pipe line.

If they had answered otherwise, they would have been giving an answer inconsistent with their answer to issue No. 1. Having accepted the theory of appellees, that the sixteen acres were subdivision property, in answering issue No. 1, they could not have then accepted appellant's theory and decided that the sixteen acres had no extra value as subdivision property and have placed the value at $600 or $700 per acre at most, as testified to by appellant's witnesses.

When the entire record, both on the main trial and on the hearing of the motion for a new trial, is considered, we are unable to say that appellant was prejudiced by the alleged misconduct. Trousdale v. Texas & N. O. R. Co., Tex.Civ.App., 264 S.W.2d 489, affirmed by the Supreme Court 276 S.W.2d 242; Rules 327 and 434, T.R.C.P.; Ford v. Carpenter, 147 Tex. 447, 216 S.W. 2d 558; Southwestern Bell Telephone Co. v. Ferris, Tex.Civ.App., 89 S.W.2d 229; Smallwood v. Edmiston, Tex.Civ.App., 246 S.W.2d 220; McCall v. Alpine Telephone Corporation, Tex.Civ.App., 183 S.W.2d 205.

■ The jury had ample evidence before them to support a belief on their part that the sixteen-acre tract had subdivision value before the laying of the pipe line but not afterwards, and this would support a finding by the jury that the damage was uniform throughout the entire tract. The evidence would further support a finding that the appellees had intended from the time they purchased the property, to subdivide and sell it for homesites.

The verdict of the jury was amply supported by the evidence and was not excessive in amount. The judgment is affirmed.

NORVELL, Justice (dissenting).

The court below rendered judgment in this case for the total sum of $20,691.79, as and for the taking of a portion and damage to the remainder of a sixteen-acre tract of land located on Farm Road No. 495, some three-quarters of a mile in a northeasterly direction from the city limits of McAllen, Texas. Of the sixteen acres, 1.199 acres were condemned as a right of way for the purpose of laying a pipe line which was to serve as a part of appellant's gas gathering system. Although the provisions of the easement contract provided that the pipe should be buried twenty-four inches below the surface of the ground, and appellee Varnum Hall testified that he estimated the pipe was actually laid three to four feet below the surface, the jury allowed a recovery of $1,487.50 for the taking of the 1.199 acres. The jury found that the 14.801 acre balance had been damaged to the extent of $1,277.50 per acre.

This award of damages obviously cannot be supported upon the hypothesis of a diminution of the value of the land for farming and agricultural purposes. It appears that a residence had been built upon the premises, but no question of damage to this structure was submitted to the jury or even suggested by the pleadings. Although the evidence shows that at the time of the laying of the pipe line and at the time of the trial, the appellees were farming their sixteen-acre tract by raising cotton and tomatoes thereon, and had never actually subdivided the tract for rural homesites or any other purpose, the award is sought to be sustained upon the premise that the property was suitable for subdivision and that its value for such purpose was destroyed by the laying of the pipe line. To say the least, the award is extremely high and, in the opinion of this writer, the estimate of value for subdivision purposes was correctly described by one of appellees' witnesses as a "speculative value."

This Court recently had occasion to examine in detail, the rules relating to the granting of new trials for misconduct on the part of a jury. Trousdale v. Texas & N. O. R. Co., Tex.Civ.App., 264 S.W.2d 489, affirmed Tex., 276 S.W.2d 242. It is not my purpose to reiterate what was said in that opinion, other than to point out that in arriving at the probability of injury we must consider all of the pertinent record and that the amount of the award or judgment is necessarily an item of prime consideration. A deviation from a prescribed standard of conduct, which when coupled with a modest or reasonable award might

be considered harmless, assumes a different aspect when the judgment approaches the exorbitant.

Four special issues were submitted to the jury. Nos. 1 and 2 relate to the difference in value of the 1.199 easement strip before and after the laying of the pipe line thereon. Issues Nos. 3 and 4 relate to the damages sustained to the remainder of the tract (14.801 acres). Two former jurymen testified upon the hearing of the motion for new trial, and it appears that either while the jury was deliberating upon the answer to Special Issue No. 2, or shortly thereafter, some of the members of the jury discussed the probability of a deep plow or ground chisel striking the gas pipe, tearing off its protective covering and thus allowing it to corrode and become weakened. This discussion was carried to the point of arguing that the pipe might explode and cause appellees' house to burn. One of the juror witnesses testified that this discussion took place for a short period which he estimated at five minutes. This conversation took place before the jury answered Issues Nos. 3 and 4, relating to damages to the 14.801 acres remaining outside the easement area.

The fact that it may be common knowledge among farmers in Hidalgo County that a type of plow or chisel in general use in that county will disturb the soil to a depth of two feet, does not to my mind remove the prejudicial effect of the statement and ensuing discussion. The vice of such discussion lies in the fact that it introduced a new element into the case which was not pleaded, suggested, nor argued in open court. Issues Nos. 3 and 4 do not mention the subdivision value hypothesis, but that theory is urged here as supporting the verdict and was no doubt argued in the trial court. Yet the supposition of possible damage and deterioration of the pipe, consequent explosion and fire, was urged within the secrecy of the jury room to support a large award of damages.

There is testimony in the record that gas carrying pipes are carefully constructed, prepared and wrapped with a protective coating. It is shown by the evidence that in the absence of negligence in manufacture, preparation and placing, such pipes are not dangerous instrumentalities. The probability of a plow or chisel striking and injuring a pipe necessarily has reference to the depth at which the pipe is laid. It is not suggested that appellant was a party to this localized common knowledge relating to plow or chisel depth, and it may be supposed that had the pipe line company been informed in regard thereto by pleadings or otherwise, it would have agreed to lower its pipe rather than pay some fifteen to sixteen thousand dollars in advance for damages in case of a possible explosion.

Ordinarily the importation of some extraneous matter into a jury's deliberation as a basis upon which to rear some rather fantastic argument would not constitute reversible error because of a lack of probable prejudice, but a $1,200 an acre verdict for damages to cotton and truck farming land (insofar as the actual use to which it is now being put is concerned), should give occasion for pause. While appellees rely upon a "subdivision value" to support their judgment, it appears that the jury, or at least a portion of them, may have relied upon deep plowing, broken pipes and burning houses to support an extremely high and (to me) speculative recovery. I am of the opinion that probable prejudice was shown and that the judgment should be reversed.