**ASSOCIATED EMPLOYERS LLOYDS, Appellant,**

v.

**Ruby Edith GRISSOM et vir, Appellees,**

**No. 15130.**

Court of Civil Appeals of Texas.

Dallas.

May 11, 1956.

Rehearing Denied June 1, 1956.

Touchstone & Bernays, and James A. Williams, Dallas, for appellant.

Mullinax & Wells, Otto B. Mullinax, Dallas, for appellees.

CRAMER, Justice.

This is a workman's compensation case. The jury found that Mrs. Grissom sustained accidental personal injury as an employee in the course of her employment, naturally resulting in her temporary total incapacity to work for 260 weeks beginning February 8, 1955, which was not due solely to a condition existing previous to her employment with Hardwicke-Etter Company, or to a condition disconnected with her job with such employer; that her incapacity to work is not due solely to natural causes; and found her average weekly wage earning capacity subsequent to November 4, 1954 to be $47.20 per week.

From the judgment, on such verdict and the undisputed evidence, appellant insurer has duly perfected this appeal, here briefing five points of error.

Points 1 to 4 inclusive assert error in overruling its motion for new trial because the jury was guilty of misconduct, in that, (1) "certain jurors during deliberations upon the issues of damages and incapacity and before a verdict had been reached discussing personal experiences with respect to injuries similar to those suffered by the appellee * * *;" (2) "a certain juror during deliberation upon the issues of damages and incapacity and before a verdict had been reached contending that if the jury paid the appellee only a small amount in damages, that such would be revealed to other insurance companies and they in turn would pay little on future cases * * *;" (3) "certain jurors during deliberation upon the issues of damages and incapacity and before a verdict had been reached discussing their past experiences and personal prejudices relative to insurance companies and corporations and their own personal injuries * * *;" and (4) "certain jurors during deliberation upon the issues of damages and incapacity and before a verdict had been reached having discussed personal experiences and prejudices as specifically set forth in the first, second and third points of error, the cumulative effect thereof doing injury to this appellant and denying to it a fair and impartial trial."

These points are countered that the trial court's findings that there was no misconduct of the jury and no harm is shown from the conduct of the jury, being supported by evidence, are binding on this Court.

These points raise but two questions: (1) Whether or not the jury was guilty of misconduct; and if so, (2) whether it is of such a nature as to require a reversal of the judgment.

Considering the question of whether there was misconduct, we must give due regard

to the trial court's implied findings of fact in favor of his action in overruling the motion for new trial. As in other cases, a reversal will not follow if there is credible evidence in support of the trial court's findings of fact and/or judgment; however all findings are subject to review when properly attacked.

Four of the jurors testified on the motion. The juror Mrs. Dickson, in substance, material here, testified that when the jury first began their deliberations she stated that she did not believe Mrs. Grissom should have anything; that was the first question the jury discussed; during the dicussion a colored man on the jury made several statements about an operation he had theretofore undergone and that his then employer had not treated him right or done anything for him; that he had to be called down about such statement; that he also stated corporations wouldn't pay as a general rule; that another juror told about having trouble with his back and was off work for two years, had to change jobs; he was glad he changed jobs, his new one was much better; that you had to watch these corporations because they wouldn't pay unless you forced them; that his back trouble had gotten better and that he could work; that another juror had stated he had had back trouble; still another juror stated he also had a back injury and he was in favor of paying the full amount because if they didn't and other companies found out, they wouldn't pay; that two of them said they were in favor of giving the full 401 weeks; one said something about giving Mrs. Grissom enough to educate her children, each a College education; that she wouldn't be able to educate her children or give them a College education; that she wouldn't be able to work now; that they all told about their troubles. At the beginning she stated Mrs. Grissom was not entitled to anything; and later after the jury had deliberated fully, went up to 260 weeks in compromise after much deliberation; also as follows: "Q. Was there any that said give fifty or a hundred weeks? A. Mrs. Moore asked them to let's compromise and make it a hundred weeks, and these two men would

not. Q. And these two men who held out, were they the ones that told about their previous back injuries? A. Yes." She also testified that she tried as best she could to comply with the instructions; she tried to consider only the law and the evidence; and that: "Q. Did you yourself permit any of these personal references to affect your judgment? A. I did—Q. Or did you abide by the court's instructions and disregard those things? A. I did the best I could under the circumstances." She further testified that she did not let the colored man's statements about how he had been mistreated by his employer affect her judgment in deciding what she was going to do in this case; she didn't consider statements about personal experiences, but that she could say, "We compromised on several things." She and others wanted to give 100 weeks but the remaining jurors would not, and she and others "finally agreed on 224 weeks, I believe." She did not think Mrs. Grissom was entitled to anything. She did not remember who told her if she would give in on one question, then they would give in on another question; also as follows: "Q. Were there any statements made by any of the jurors to the effect with reference to big corporations? A. They said if you let them get by with this, they will notify all the other corporations and they won't be paying anyone."

Mr. Cecil Wilson, Foreman of the jury, testified that he remembered the colored man employed by Texas Electric Company, who told the jury about being operated on while working for his Company; that he was still hurt and the Company doctor said he was all right. This colored boy talked a good deal in the jury room. He made some remarks about corporations not treating you right. The witness also stated he remembered the juror who worked at Perrin Field, who mentioned he had a prior back injury himself and he had been out of work two years, he believed, but he had been transferred and got another job and was all right; that he knew back injuries could give a person a great deal of trouble; that another juror told about his back injury which had been operated; he was

satisfied with the way he was treated. The colored juror made a statement while they were deliberating that corporations were cold-blooded. The jury was out several hours before they reached a verdict.

Mrs. Hammons, in substance, testified that Hill, the colored man on the jury, said, when they retired, that a long time ago he was the porter for Texas Electric Company "and that he had a back injury and he said he went to the hospital and they dismissed him too soon and told him he had to get right back on his job, and said that if they had given him compensation he would have gotten over it but he never did. He said he was for total disability because he knew what insurance companies would do. Q. He made the statement, did he, that he never had gotten over his trouble? A. Yes, he did. Q. I will ask you what are the facts with reference to whether or not Johnnie Hill made the statement that big corporations wouldn't treat anybody right? A. Yes, he said that. He said it more than once. Q. Did he say that corporations were cold-blooded? A. Yes." Mrs. Hammons also testified: "Q. I will ask you to state what, if anything, Mr. Spears said about prior back injury that he had. I will ask you this question, What are the facts with reference to whether or not Mr. Spears told about a prior back injury and an operation he had on his back? A. I can't recall all he said but he did say that he had one and that he knew that the insurance company wouldn't do what he wanted them to do. And Badgett had a back injury and he drew total disability. That's where our argument began. We told him he wasn't totally disabled. Q. That Ruby Grissom wasn't totally disabled? A. Badgett. He said he drew total disability—he drew this money. But, of course, he is doing hard work now. And I said, 'That's proof that she is not totally disabled or you, that you are not, because,' I said, 'if you are totally disabled that means for life.' Q. Did he say that he knew from his own experience from his back injury that it caused a lot of trouble and lasted a long time? A. Yes, he said nobody but him or anybody that had a back injury knew how you suffered." And that:

"Q. What are the facts with reference to whether or not in their conversations they were running down insurance companies and corporations? A. Well, they were. Hall was and Badgett was and also Spears. Johnnie did when he said anything after Mr. Wilson told him to be quiet about that, that his past experience had nothing to do with this case and to get back to the questions. He asked him more than once and then he quieted down. He more or less slept through it. Q. These other two men, Mr. Badgett and Mr. Hall and Mr. Spears, did they continue to talk about their back? A. They did. And they had a conference of their own in the morning. Q. Do you know what they said? A. No. They went over to the window and they had a conference among themselves. Q. Those three men? A. They did. Q. Did those three men continue to run down insurance companies? A. Yes."

Juror Spears testified, in substance, that he had received a head injury, or bruised head; also that he remembered the colored juror telling the jury "something about an accident with the Texas Electric, I believe; that he had had a spinal shot or a back injury, or something to that effect.

"Q. Did anybody else mention any injury that he had, in the jury room? A. I believe Mr. Hill told us something about an accident that he had been in. If I remember, correctly, your Honor, he said something that he changed jobs and had no ill effect from it, or something or other.

"Q. Did you pay any attention to that nigger doing all that talking? A. I did not, no, sir. It had no bearing on my decision.

"Q. He was kind of a loud mouth talker anyway? A. Yes, he does a lot of talking.

"Q. But it didn't amount to anything? A. It didn't amount to anything to me, sir.

"Q. That's all.". On Cross-Examination:

"Q. I want to ask you one or two more questions. It was Mr. Hall, wasn't it, that told about having a back injury? A. I believe his name was Hill. I may be wrong.

"Q. The colored boy's name was Hill. A. Then it was Hall.

"Q. It was Mr. Kenneth Hall that worked out at Perrin Field? A. Yes.

"Q. And Mr. Hall made the statement that he had had a back injury in the past? A. I believe he did.

"Q. And had been off about two years? A. I don't remember him making any statement about how long he had been off. He said something about he had to change jobs and had no effect from it, if I remember correctly.

"Q. That he had changed jobs because of the back injury? A. Yes, sir.

"Q. Mr. Hall made that statement, did he not? A. Yes, sir.

"Q. That's all."

■ The general rule is that the jury must base its findings solely on the evidence presented during the trial. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028.

■ Jurors cannot become witnesses. The dividing line, material here, is between matters of (a) common knowledge, which is limited to elemental experiences in human nature, commercial affairs, and every day life as affected by local conditions which are, within reasonable limits, permissible, Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622, and (b) additional evidence which involves special knowledge of material matters still being discussed and deliberated upon, which is not permitted. Maryland Cas. Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62. See note on Gillette Motor Transport Co. v. Whitfield, 145 Tex. 571, 200 S.W.2d 624, and note thereon in 26 Tex. Law Review 89; 30 Tex. Law Review 630.

■ After a careful consideration of the evidence referred to above, we have concluded that "additional evidence" was given by the jurors to each other in the jury room, which was of such a nature as to require a new trial. Points 1 to 4 inclusive are sustained.

■ Point 5 asserts error in the rendering of judgment against "the appellant for 260 weeks compensation at the rate of $25 per week in that the jury found the injury was sustained by the appellee on November 4, 1954 and that the incapacity to labor commenced February 8, 1955, such finding requiring the trial court as a matter of law to deduct the 13 weeks between the injury and the commencement of incapacity from the total number of weeks found by the jury * * *." Appellees counter that there was no error in rendering judgment for 260 weeks compensation commencing February 8, 1955.

In Texas Employers Ins. Ass'n v. Reed, 150 S.W.2d 858, 859, syl. 14 (error ref. judg.cor.), the Amarillo Court of Civil Appeals held, directly in point here, that: "In workmen's compensation suit where partial incapacity did not commence on June 17, 1938, the date of the injury, but commenced on August 25, 1938, some 10 weeks later, and jury found that partial incapacity would end on May 25, 1944, allowance of compensation for 300 weeks beginning on August 25, 1938, was proper, as against contention that compensation could not exceed 300 weeks from date of injury and that ten weeks should be deducted in calculating compensation. Vernon's Ann.Civ.St. art. 8306, §§ 10, 11." See also Indemnity Ins. Co. of North America v. Williams, 129 Tex. 51, 99 S.W.2d 905. Point 5 is overruled.

For the error complained of in points 1 to 4 inclusive, the judgment of the trial court is reversed and cause remanded for new trial.

Reversed and remanded.