Herbert A. WALLS et ux., Appellants,

v.

RAPID TRANSIT LINES, INC., et al.,
Appellees.

No. 14865.

Court of Civil Appeals of Texas.

Houston.

Feb. 2, 1967.

Rehearing Denied March 23, 1967.

John H. Holloway, Houston, for appellants.

Baker, Botts, Shepherd & Coates, Roger R. Wright, Jr., Houston, for appellees.

COLEMAN, Justice.

This is a suit for damages for personal injuries arising out of an intersectional collision. Judgment for the defendant was entered on a jury verdict. The principal ground relied on for reversal is jury misconduct.

Appellant, Valtra J. Walls, was driving her automobile on Dowling Street through the intersection with Cleburne Street when she was involved in a collision with a bus owned by appellee. She was driving in the rain at night on a well lighted busy street. She was traveling at a speed of about 28 miles per hour. When she was about half a block from the intersection the bus was stopped at a stop sign on Cleburne Street. The head lights of the bus were lighted, as were the lights inside the bus. There is evidence that appellant was driving without lights. The bus slowly pulled out into the intersection and hit the left rear portion of appellant's car. Although both appellant and the bus driver testified that they looked for approaching traffic, both testified that they failed to see the vehicle driven by the other.

The jury found that the bus driver did not fail to keep a proper lookout, yield the right of way, or timely apply his brakes. It found that appellant failed to yield the right of way, failed to keep a proper lookout, was driving at an excessive rate of speed under the circumstances, was driving without headlights, and that each of these acts of negligence constituted a proximate cause of the collision.

After carefully studying the statement of facts we have reached the conclusion that each of these issues was properly submitted to the jury and that the answers returned by the jury are supported by sufficient evidence and that none of the answers is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellants' first point of error reads:

"The Court erred in denying Appellant's Motion for New Trial because of material jury misconduct prejudicial to the appellant, or reasonably calculated to result in probable harm, as to each of the following separately assigned sub-points of error, and which errors are also asserted to be cumulative errors:

"(1) The jury considered the issues based upon who was responsible for the accident rather than deliberating calmly upon the facts supporting the individual issues as submitted;

"(2) The jury foreman improperly and wrongfully informed the jury that the issues were to be determined 'as a matter of

law' upon who had the right of way, as controlled by Issue #1;

"(3) The jury improperly and wrongfully considered the right of way issues, and other issues based upon what they decided was the 'danger zone', which they determined to be appellant's stopping distance from the intersection based upon her speed; differently stated, that once the bus stopped for the stop sign, that it was appellant's duty to avoid a collision if she was within the 'danger zone';

"(4) The jury received new evidence pertaining to braking distances based upon juror's knowledge of charts and speed as relating to such distances;

"(5) The jury received new evidence in form of reconstruction of diagram of accident scene and which was used by the jury foreman in argument to pursuade juror Thompson to change his vote;

"(6) The jury failed to vote upon the damage issues so as to unanimously determine the damages by reason of statement of the jury foreman, and others, that damages could not be awarded because appellant was responsible for the collision, and that such fact was determined from the issue was to whether the bus had the right of way; and,

"(7) The Appellants did not have a fair and impartial jury and was denied a jury trial based upon calm deliberations upon all issues as indicated by juror, Mrs. W. R. Snell's, testimony that she was 'agitated' by having to continue as a juror in the deliberations because they had planned to leave on vaction that week, and her husband was ill."

■ The trial court's order denying the motion for new trial is supported by an implied finding that the specific misconduct complained of did not occur. If the evidence is in conflict as to whether there was misconduct, this Court is bound by the implied finding of no misconduct. Brawley v. Bowen, 387 S.W.2d 383 (Tex.Sup.1965).

Three jurors testified on the jury misconduct issue. Mrs. Snell testified that the jury foreman stated that the first issue (failure of the bus driver to yield the right of way) was the controlling issue and that once that issue was granted the others fell in place; that issue No. 1 controls the other issues; that they had to decide whether the bus driver was in the right. She testified:

"We voted on a number of issues there, I don't know how many, and we got all 'yes', but the first issue we couldn't get anything. We would come back to the same thing again, then the foreman said, 'Well, we have got to settle this first issue before we can do anything, because that is the main issue right there.' "

At another point Mrs. Snell testified that when the jurors were unable to agree on the answer to Issue No. 1, the foreman suggested that since they were not getting anywhere on that issue, they should consider the other issues and "he read them off and then we voted." She testified that one juror told her that judging from the *differences in speeds* appellant's car was seven car lengths from the intersection when the bus entered it. There was some mention of a danger zone, "but it was all according to what you had on that board up here, you know;" that the jury foreman didn't tell them what constituted the danger zone or the immediate hazard zone "because he knew we were in the courtroom and saw the same thing he did. We formed our own opinion."

She didn't remember anybody drawing a diagram in the jury room. She testified that one of the jurors computed some distances on a piece of paper, and that someone did tell what the stopping distance would be for thirty miles an hour, and he drew down as to how far you would go, "just like you did in there." In answer to the question, "That was some information he got off some charts, wasn't it, as to the braking distance of the cars?" she answered, "No, that was from the jury * * * what we heard in here."

She testified that the jury reached unanimous agreement on some of the issues before Issue No. 1 was answered. She identified as such issues the issues on the failure of the bus driver to keep a proper lookout and his failure to properly apply his brakes.

The testimony of this witness alone would support the trial court's implied finding that there was no agreed plan to answer the issues in such a way as to find a verdict for one or the other of the parties.

Mr. Thompson testified that the jury foreman constructed a diagram similar to the one used in court which purported to show what was on the blackboard, and which he, Thompson, considered equivalent to the one on the blackboard. He testified that juror Cook stated that there were charts which indicated stopping distances at certain speeds and from the stopping distance that appellant used, her speed must have been greater than 25 miles per hour. Thompson stated that although he had seen such charts, he contended that since they were not in evidence, the charts should not be considered. He didn't remember what Cook said about the charts in the presence of the jury, but that he asked if the charts weren't based on dry pavement and pointed out that in this case the pavement was wet. He couldn't remember the figures used, but he understood that Cook was trying to show that appellant had plenty of time to stop after the bus entered the intersection. While his testimony as to the discussion of the "danger zone" was confused, at one point he said that Mr. Cook argued that if appellant was in the area where she couldn't have stopped, then she had the right of way. As he understood the discussion a stopping distance of 60 feet was used as the "danger zone".

In answer to the question, "Was the issues relating, as far as what Mrs. Walls did or did not do, in connection with the jury deliberations tied into the question of whether or not the bus yielded the right of way in the first place?" this witness answered, "Not that I can recall."

Thompson testified that he was the juror who held out and that after the discussion about the charts he changed his vote on the right of way issue. He testified that while considering the issues relating to appellant's conduct, there was discussion as to what a witness who was not called would have testified, and that after the discussion he changed his vote on these issues, but he didn't know which one of the issues was being considered when the discussion took place. He testified that when the damage issues were reached the jury decided to first vote whether to award any damages at all, and if it was agreed that some damages should be awarded, then they would discuss how much to award. Several votes were taken because one juror wanted to allow compensatory damages for medical expenses, but Thompson's argument that damages couldn't be allowed against one who was blameless prevailed and, voting on the three damages issues at the same time, it was agreed that the issues be answered "none". He testified that he thought Issue No. 1 was the first issue answered, but that he was not certain, and each issue was separately discussed and separately decided.

Mr. Cook said that he didn't remember when the various issues were decided. He remembered the discussion about the danger zone, but that he did not remember relating that discussion to the lookout issue. He did not remember any specific number of feet being mentioned as being the danger zone, nor discussing with Mr. Thompson charts showing various braking distances, and he didn't remember getting into any detailed discussion with Mr. Thompson about the danger zone, and that he did not discuss with him the charts as related to whether or not they were on wet or dry pavement. He didn't recall anyone else discussing charts and speed distances with him, although he recalled that there was "some mild discussion on it."

He remembered that the foreman told the jury that if the bus actually stopped for the stop sign and Mrs. Walls was not in

the danger zone at that time, as a matter of law he could proceed across the intersection and that Mrs. Walls, then being outside the danger zone, had to yield to him. He didn't remember there being any discussion about an absent witness. He did not remember any discussion in the jury room about witness cards. The jurors voted on all the issues, but it was generally agreed that since the bus driver was not at fault, appellant was not entitled to any damages. He did not remember any diagram.

He testified that there was some discussion about how long it takes to stop at certain speeds and that "* * * it was bandied around there just a few times and then they said, well, no, we won't * * * since we don't know, we won't use it, * * * Mr. Thompson said, 'No, we can't. We don't have anything to go on so we won't use it. If I remember right that whole discussion about the charts was dropped.'" He stated that there was discussion that a car going thirty miles per hour could be stopped in half a block and this was used a great deal.

The trial court's implied finding of no jury misconduct is supported by this testimony. Even if it be conceded that new evidence was presented in the jury room concerning stopping distances, it is not probable that this evidence affected the finding that appellant was driving without lights at night, or that she failed to keep a proper lookout, and that each of these acts of negligence constituted a proximate cause of the collision. Since these findings alone would require a judgment for appellee, the misconduct, if it occurred, was not such as was calculated to, and probably did, cause the rendition of an improper judgment. Appellants' point of error No. 1 cannot be sustained. Rule 327, Texas Rules of Civil Procedure; Texas Employers' Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958); Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028 (1943).

During the trial there was testimony that there were two passengers on the bus at the time of the collision. The bus driver secured from each of them a card giving their names and addresses. Appellant did not find out their names at the scene of the collision. These facts were known to the jury. One of the passengers testified at the trial. The other was not present. Prior to resting appellee produced as a witness an investigator on its payroll and attempted to question him about his efforts to locate the other passenger. This testimony was excluded by the trial court. After both parties had rested, but before the court's charge was read, the judge, over appellants' objection, permitted appellee to reopen and admitted the investigator's testimony that he went to the address written on the card by the passenger and found no one there; that he inquired at nearby houses and found no one who knew a person having the name listed on the card; that he found a person having that name in a City directory and located him, but he denied having been a witness to the collision. Appellant requested the right to reopen and introduce testimony that she had asked appellee to give her the names of the passengers and that appellee had refused to give the information. The trial court denied this request. One ground urged for a new trial was that since the trial appellant has discovered that the address given by the passenger, at which the investigator testified he tried to locate him, was a vacant lot.

In this connection appellant presents these points:

### Second Point

"Error in denying new trial because of newly discovered evidence of false testimony as to efforts of appellee bus company to locate a witness when both counsel and testifying investigator knew such evidence was untrue and so as to infer to jury that witness would testify favorable to appellee.

## Third Point

"Error in refusing appellant right to show that testimony of efforts to locate alleged 'missing witness' was not true because of refusal to furnish the names of such witnesses to appellant, where appellee was permitted to re-open after case was ready for jury argument, so as to leave impression with the jury that appellants did not make any attempt to locate the witness because the testimony would be unfavorable on the headlights issue.

## Fourth Point

"Error in permitting to re-open after case was closed and just prior to jury argument being abuse of discretion under circumstances."

While we are unable to find any instance where the investigator testified falsely, his testimony was calculated to leave the impression on the court and jury that the address of the missing witness was a house rather than a vacant lot. It is appellants' position that the result of the testimony of the attempts to locate the witness was to leave the impression on the jury that the witness would have given evidence favorable to appellee. They further contend that the refusal of the court to permit them to show that they tried to find the name of the witness left the impression that the appellants thought the testimony of the absent witness would not have been favorable to them.

■ The jury knew that the man was on the bus at the time of the collision and that the bus driver had his name. The jury knew that appellant did not know the names of the passengers. Under the circumstances the trial court did not abuse his discretion in permitting the case to be reopened. Central American Life Insurance Co. v. Krause, 284 S.W.2d 192 (Tex. Civ.App.1956). Neither of these points presents an error which probably resulted in the rendition of an improper judgment. The newly discovered evidence was not relevant to a material issue in the case. While it might have been used to discredit appellee as having been somewhat less than candid in its presentation of the evidence of diligence in seeking the witness, the testimony was not such as to require a conclusion that without it appellant was deprived of a fair trial, or that a different verdict would probably have resulted had the testimony been available.

■ During the course of his argument appellee's lawyer referred to the attorney for appellants as a "slick tongued young lawyer." Appellants contend that this remark was so prejudicial that an instruction could not have cured the harm caused thereby. It appears that the trial court sustained an objection to the remark and instructed the jury to disregard it. We do not consider the remark so highly prejudicial as to be incurable. Ford Motor Co. v. Whitt, 81 S.W.2d 1032 (Tex.Civ.App., Austin 1935, error ref.); Western Cotton Oil Co. v. Patterson, 271 S.W.2d 106 (Tex. Civ.App., Eastland 1954, error ref., n. r. e.).

■ By points 7 and 8 appellants complain of a number of questions asked of various witnesses by appellees' counsel. Objections were sustained to most of these questions. The questions asked the witness, James Evans, were not improper. The mere asking of an improper question is not ground for reversal where it does not appear that the attorney acted in bad faith. The inadmissibility of the testimony sought to be elicited by the questions complained of is not so clear as to warrant the conclusion that appellees' lawyer could not have reasonably supposed he had a right to ask them. Price v. Pelton, 199 S. W.2d 249 (Tex.Civ.App., Austin 1947).

The trial court's instruction on the law with reference to right of way followed the applicable statute. It was not subject to the objections made by appellant. McDonald v. New York Central Mutual Fire Insurance Co., 380 S.W.2d 545 (Tex.Sup.

1964); Austin Road Company v. Thompson, 275 S.W.2d 521 (Tex.Civ.App., Ft. Worth 1955, error ref., n. r. e.). The requested instructions were improper as assuming that Mrs. Walls' automobile entered the intersection first, and constituted an immediate hazard at the time the bus entered the intersection, both disputed issues of fact.

 Appellants' Points 9, 10, 12, 13, 15, 16, and 18, all charge error on the part of the trial court in refusing to disregard the answers made by the jury to various issues submitted to it. The trial court may not disregard the answer made to a special issue by the jury if there is any evidence supporting the answer. These points, therefore, are "no evidence" points. There is some evidence supporting each of the answers of which complaint is made. McDonald v. New York Central Mutual Fire Insurance Co., 380 S.W.2d 545 (Tex.Sup. 1964).

■ While the answers made by the jury to the damage issues are contrary to the great weight and preponderance of the evidence, these answers are immaterial in view of the answers on the liability issues, which are properly supported by evidence. Dunn v. Sears Roebuck and Co., 371 S.W. 2d 731 (Tex.Civ.App., Houston 1963, error ref., n. r. e.).

After considering each point of error presented by appellants, we have concluded that the judgment of the trial court should be affirmed.

*Affirmed.*

On Motion for Rehearing

BELL, Chief Justice.

After our original opinion in this case, and before disposition of the motion for rehearing, we granted appellants' motion to file an amended brief though the motion denominated it a "Supplemental Brief." Thereafter the motion for rehearing was considered. We have treated the supplemental brief as an amended one.

We have considered each point of error assigned, and consider each of them to be without merit.

The motion for rehearing is overruled.

COLEMAN, J., not sitting.